

# UNITED STATES DISTRICT COURT

Northern Illinois District of Illinois
Eastern Division

**RECEIVED**

ᐸ AUG 19 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case No.

The State of Illinois,
Department of Children and Family Services

)
)
)

*NOTICE OF REMOVAL OF ACTION UNDER*
*28 U.S.C.§1441(a) - FEDERAL QUESTION*

*Plaintiff(s)*

1:19-cv-05570
Judge Edmond E. Chang
Magistrate Judge Gabriel A. Fuentes

-v-

Avangelina V. Cazares
Josue J. Turcios

*Defendant(s)*

)
)
)
)
)
)
)

FILED

2019 AUG 19 AM 9: 58

## NOTICE OF REMOVAL TO FEDERAL COURT

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendent(s) Avangelina Cazares and Josue Turcios hereby removes to this Court the state court action described below.

# NOTICE OF REMOVAL TO FEDERAL COURT

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendent(s) Avangelina Cazares and Josue Turcios hereby removes to this Court the state court action described below.

**JURISDICTION AND AUTHORITY FOR REMOVAL:**

1. On May 3rd, 2019, an action was commenced by Plaintiff; The State of Illinois, Department of Children and Family Services vs. Defendents; Avangelina Cazares and Josue Turcios. The case numbers for the minors are **Juvenile No**: **19JA000454**, **19JA000455** and **19JA000456**.
2. 28 U.S. Code § 1441(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
3. Article VI of the U.S. Constitution which dictates that federal law is the "supreme law of the land." Every state must follow the Constitution, laws, and treaties of the federal government in matters which are directly or indirectly within the government's control. Under the doctrine of preemption, which is based on the Supremacy Clause, federal law preempts state law, even when the laws conflict. Thus, a federal court may require a state to stop certain behavior it believes interferes with, or is in conflict with, federal law.
4. 28 U.S. Code § 1446. Procedure for removal of civil actions where a defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action. Defendant(s) were not served via service of process with a copy of the proceedings or summons and served via appearance. There is no summons on record, however a court records were obtained by request from the Illinois, Cook County Child Protection Clerks office.
5. Notice of Adverse Parties and Court: Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

I.    **The Parties to This Complaint**

    A.    **The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | The State of Illinois, Department of Children and Family Services<br>Attention: DCFS Legal |
| Street Address | 1100 S. Hamilton |
| City and County | Chicago, Cook County |
| State and Zip Code | Illinois, |
| Telephone Number | N/A |
| E-mail Address | N/A |

    B.    **The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Avangelina Cazares |
| Job or Title *(if known)* | N/A |
| Street Address | 714 W. 95th St |
| City and County | Chicago, Cook |
| State and Zip Code | Illinois, 60628 |
| Telephone Number | 747-777-3579 |
| E-mail Address *(if known)* | avangelinavictoria@gmail.com |

Defendant No. 2

| | |
|---|---|
| Name | Josue Turcios |
| Job or Title *(if known)* | N/A |
| Street Address | 714 W. 95th St |
| City and County | Chicago, Cook |
| State and Zip Code | Illinois, 60628 |
| Telephone Number | |
| E-mail Address *(if known)* | josueturcios171@gmail.com |

## II.     Background

On May 3rd, 2019, an action was commenced in the Circuit Court of Cook County, Illinois Department of Juvenile Justice and Child Protection, Child Protection Division. Pursuant to 28 U.S.C.§1441(a) except for the Summons a copy of the Petitions are attached hereto as Juvenile No: 19JA000454 **Exhibit A**, Juvenile No: 19JA000455 **Exhibit B**, and Juvenile No: 19JA000456 **Exhibit C**. Pursuant to 705 ILCS 405/3-17(7) *see* **Exhibit D**. A copy of the summons and petition shall be provided to the person at the time of his appearance. Neither of the Defendants were served with a copy of the Summons or Petition and there is no Summons on record. The Defendants Avangelina Cazares and Josue Turcios were unaware they were involved in an adjudication for wardship proceeding because Avangelina Cazares was only provided with a copy of a Notice for Shelter Care Hearing see **Exhibit E** that would commence on May 3rd, 2019 for the minors Phoenix Tello, and Anubis Tello. The Shelter Care Hearing did not commence, in lieu the Temporary Custody Hearing commenced on May 3rd, 2019. The State of Illinois, Department of Children and Family Services Petition for Adjudication of Wardship and warrant *see* **Exhibit F** for the minors states that the minors were taken to 5001 S. Michigan for shelter care, however the minors were not placed in shelter care. Pursuant to 705 ILCS 405/2-10.1 Whenever a minor is placed in shelter care with the Department shall prepare and file with the court within 45 days of placement under Section 2-10 a case plan which complies with the federal Adoption Assistance and Child Welfare act of 1980 *see* **Exhibit G**. The case plan was not filed within 45 days because the investigation did not conclude until June 29th, 2019. The Illinois Juvenile Court Act of 1987 and Illinois The Children and Families Services Act only refers to the archaic Adoption Assistance and Child Welfare Act of 1980 regarding shelter care, concurrent planning, case plan, reasonable efforts and placement. These Illinois State Acts of law contradict the enacted federal Adoption and Safe Families Act of 1997.

1. The State of Illinois, Department of Children and Family Services, Petition for Adjudication of Wardship entitled, State of Illinois Cook County; In the Interest of Camille Turcios Juvenile No: 19JA000454 *see* **Exhibit H**. 2. The State of Illinois, Department of Children and Family Services, Petition for Adjudication of Wardship entitled, State of Illinois Cook County; In the Interest of Anubis Tello Juvenile No: 19JA000455 *see* **Exhibit I**. 3. The State of Illinois, Department of Children and Family Services, Petition for Adjudication of Wardship entitled, State of Illinois Cook County; In the Interest of Phoenix Tello Juvenile No: 19JA000456 *see* **Exhibit J**. The State of Illinois, Department of Children and Family Services is seeking to adjudicate the minors Camille Turcios, Phoenix Tello, and Anubis Tello wards of the State of Illinois.

The State of Illinois, Department of Children and Family Services asserts in the Petitions for Adjudication of Wardship of the minors; This minor's siblings report on ongoing issue of domestic violence in the home while the children are present. The minor's siblings state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by this minor's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of this minor's father. Mother denied having knowledge of this incident was previously investigated. Mother is refusing access to this minor. Mother further disclosed that minor's father is dealing with depression and at times is paranoid. Mother attempted to remove this minor's siblings from their placement after protective custody was taken. Parent reside together. Father resides in Kentucky.

This paragraph was copy and pasted for every section on the Petitions for Adjudication of Wardship Pursuant to Illinois Juvenile Court Act of 1987. The petition was brought under 0702 405/2-3(1)(b); s/he is a minor under 18 years of age whose environment is injurious to his welfare, 0705 405/2-3(2)(ii); creates a substantial risk of physical injury to such minor by other that accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss of impairment of any bodily function, 0708 405/2-3(2)(v); inflicts excessive corporal punishment.

2. The Motion for Temporary Custody *see* **Exhibit K, Exhibit L**, and **Exhibit M** asserts 1. There is probable cause that the minor is neglected and abused, pursuant to 705 ILCS 405 2-3(1)(b), 2-3(2)(ii), and 2-3(2)(v) as detailed in the attached Petition for Adjudication for Wardship. 2. There is immediate and urgent necessity to take the child into temporary custody, pursuant to 705 ILCS 405/2-10, in that; This minor's siblings report on ongoing issue of domestic violence in the home while the children are present. The minor's siblings state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by this minor's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of this minor's father. Mother denied having knowledge of this incident was previously investigated. Mother is refusing access to this minor. Mother further disclosed that minor's father is dealing with depression and at times is paranoid. Mother attempted to remove this minor's siblings from their placement after protective custody was taken. Parent reside together. Father resides in Kentucky. 3. Reasonable efforts cannot

## III.    Basis for Jurisdiction a Federal Question

In United States law, a state actor is a person who is acting on behalf of a governmental body, and is therefore subject to regulation under the United States Bill of Rights, including the First, Fifth and Fourteenth Amendments, which prohibit the federal and state governments from violating certain rights and freedoms. There are a number of situations where the United States Supreme Court has recognized the conduct of individuals or private organizations to be "state action," and therefore subject to provisions of the Constitution such as Equal Protection, Due Process, or the First Amendment. There can be not the slightest doubt here that the children's claims under federal statutory law, the Constitution, and District of Columbia law all arise from a common set of facts. The Adoption and Safe Families Act of 1997 Public Law 105-89 address many provisions for State of Illinois compliance not limited to Sec.101. Clarification of the reasonable efforts requirement, and Sec.401. Preservation of reasonable parenting. Nothing in this Act is intended to disrupt the family unnecessarily or to intrude inappropriately into family life, to prohibit the use of reasonable parenting methods of parental discipline, or to prescribe a particular method of parenting. The Family Violence Prevention and Services Act 2010 Public Law 11-320 requires the States to make efforts to provide immediate shelter and supportive services for victims domestic violence and The Violence Against Women Act of 1994 42 USC 13925 defines "domestic violence" felony or misdemeanor crimes of violence and is not "child abuse and neglect".

### A.    Basis for Jurisdiction Statement of Claim

The State of Illinois, Department of Children and Family Services violated the family's Constitutional Forth Amendment due process protections by seizing the minors of Avangelina Cazares and Josue Turcios without probable cause "Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000)* Holding that seizing a child from home requires probable cause or exigent circumstances. *Brokaw v. Mercer Cnty., 235 F.3d 1000, 1010 (7th Cir. 2000)*. In *H.R. v. State Department of Human Resources, 612 So.2d 477 (Ala. Ct. App. 1992);* the court held that an anonymous tip standing alone never amounts to probable cause. CPI Halema Townsend documented in the safety assessment "The child or children are likely to be moderately to severely harmed in the immediate future." **The Second Circuit stated in a due process context, "[e]mergency circumstances mean circumstances in which the child is immediately threatened with harm . [T]he mere possibility of danger is not enough."** *Tenenbaum, 193 F.3d at 594.* Despite the lack of probable cause, the State's Attorney screened the case in based on the affidavit submitted by CPI Halema Townsend to prosecute a Petition for Adjudication of Wardship in order to obtain temporary custody of the minors and a warrant for Camille Turcios. If a court issues a warrant based on an uncorroborated anonymous tip, the warrant will not survive a judicial challenge in the higher courts. Anonymous tips are never probable cause. **"An anonymous tip, standing alone, is rarely sufficient to provide probable cause for a warrant,"** *Kohler v. Englade, 470 F.3d 1104, 1110 (5th Cir.2006).* The State of Illinois, Department of Children and Family Services violated the family's Constitutional Fourteenth Amendment protections when separating the minors from their family and shall not deprive any person of life, liberty, or property, without due process of law; nor deny to any person the equal protection of the laws. *Hodgson v. Minnesota, 497 U.S. 417 (1990).* In *Hodgson* the Court found that parental rights not only are protected under the First and Fourteenth Amendments as fundamental and more important than property rights, but that they are "deemed essential." A child has a constitutionally protected interest in the companionship and society of his or her parents. *Ward v. San Jose, 9th Cir. (1992)* State employees who withhold a child from her family infringe on the family's liberty of familial association. *K.H. through Murphy v. Morgan, 7th Cir. (1990)* The forced separation of parent from child, even for a short time, represents a serious infringement upon the rights of both. *J.B. v. Washington County, 10th Cir. (1997)* Parent's interest is "the highest order." And the court recognizes "the vital importance of curbing overzealous suspicion and intervention on the part of health care professionals and government officials." DCFS commenced an action for a Petition for Adjudication of wardship on May 3rd, 2019 and Pursuant to 705 ILCS 405/2-14 see Exhibit. the adjudication action did not commence within 90 days despite the family's objection to a waiver. Consistent with the Federal Adoption Assistance and Child Welfare Act of 1980, Public Law 96-272, as amended, and the intent of this Act, the State of Illinois will act in a just and speedy manner to determine the best interests of the minor, including providing for the safety of the minor, identifying families in need, reunifying families where the minor can be cared for at home without endangering the minor's health or safety and it is in the best interests of the minor, and, if reunification is not consistent with the health, safety and best interests of the minor, finding another permanent home for the minor. "The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution." So finding, the Supreme Court held in the 1967 case of *Klopfer v. North Carolina* that the right to a speedy trial is one of those "fundamental" liberties that the Due Process Clause of the Fourteenth Amendment makes applicable to the states.

**B.    Facts Supporting Basis for Jurisdiction**

The State of Illinois, Department of Children and Family Services employees unlawfully removed the minors from the care of their biological mother and father on May 1st, 2019. The child protection specialist Halema Townsend determined that the home environment was unsafe in the safety assessment *see* **Exhibit N** because "The child or children are likely to be moderately to severely harmed in the immediate future" and "both children expressed fear of the alleged perp due to the on going domestic violence in the home." Contrary to these statements the safety threat identification question 6 denies "Child is fearful of his/her home situation because of the people living in or frequenting the home." During a pending investigation the selection criteria for Intact Family Services require a families consent to voluntary accept services *see* **Exhibit O** , however Halema, documented that "Nm refused to agree to a safety plan that the oldest children expressed fear of the nm due to the ongoing domestic violence acv self reported that the mothers paramour caused his reported injuries during the 2018 child abuse investigation" therefore the family lacks exculpatory mitigating circumstances as an answer to the question "Is there a family strength that may serve to control or manage the safety threat?" The safety assessment trauma experience documents "There is a suspicion that the child has experienced physical abuse but no confirming inculpatory evidence and "There is no inculpatory evidence that the child has experienced neglect." The safety of the home documents "No health or safety concerns on the property." The children were placed in substitution of care; substitution of care is only appropriate where there are safety threats that cannot be controlled or mitigated through the service provision and it is necessary for the removal of the children from the children's caregiver via a juvenile court order, however the removal of the children is contrary to the recommendation of a safety plan. Illinois Title 89 Part 300 Section 300.120 *see* **Exhibit P**, Child protection staff, may take temporary protective custody of a child without consent of the persons responsible for the child's welfare, if they have reason to believe that: "leaving the child in the home or in the care and custody of the child's caregiver presents an imminent danger to the child'd life or health and "there is insufficient time to obtain a Juvenile Court order authorizing temporary custody." The administrative law also states "Department child protection staff shall ensure and document that reasonable efforts were made to prevent or eliminate the need to remove a child from the child'd home." The case notes sub-category reasonable efforts *see* **Exhibit Q**, documented on May 2nd, 2019 by Anita Makeover states "this case had police involvement with current assigned CPI" and "the previous efforts and recommended that the efforts for the mid-night shift would not be beneficial to go out due to the safety factors involved", however the police report redaction notice does not include any criminal police reports relative to the safety of the children *see* **Exhibit R**. On May 2nd, 2019 reasonable efforts made by Halema, were documented in so far as "contact with the Chicago Police Department to request assistance with a pending investigation on May 1st, 2019", "CPI explained she was informed by the manager that she needs to implement was safety plan for the children" and "police were allowed in the home and confirmed that the children had beds and computers in the home and the home has working utilities and new appliances the office added that he's seen homes in much worse conditions." Pursuant to *20 ILCS 505/5 see* **Exhibit S**, Reasonable efforts are required "To prevent the placement of children in substitute care when the children can be cared for at home or in the custody of the person responsible for the children's welfare" and "Acceptance of such services shall be voluntary."Furthermore, when reasonable efforts are not required is dependent on aggravating circumstances "Aggravated battery, aggravated battery of a child, or felony domestic battery, any of which has resulted in serious bodily injury to the minor or another child of the parent" and there is no mention of "domestic violence". The Request for Filing Abuse/Neglect Petition: Prior Report History documents the prior "unfounded" report 04/11/2018 for "allegation 10 cuts bruises welts abrasions and oral injuries" and the pending "allegations 60 environmental injurious and #82 environmental neglect" *see* **Exhibit T**. The narrative descriptions both describe the anonymous hotline call and are not first hand knowledge to the investigations. The Affidavit Documenting DCFS Efforts was signed under penalties provided by law Pursuant to Section 1-109 of the Illinois Code of Civil Procedure *see* **Exhibit U**. The affidavit states events that brought this case to the attention of DCFS at this time "the mother was dishonest with the prior investigator" "involved in the ongoing and escalating domestic violence in the home" and "the home cluttered and is a hazards to the children." The specific reason(s) I have identified that leads DCFS to place "mothers unwillingness to protect the children due to her involvement in the ongoing and escalating domestic violence" and "the home cluttered and is a hazard to the children." Under the circumstances, no efforts would prevent placement of the child "The child will be placed at substantial risk for physical injury/environment injurious if they remains in the care of their biological mother" and the above information is based on "information received from others which I believe to be true." Pursuant to 705 ILCS 405/2-18 the affidavit does not meet the burden of proof and the rules of evidence in the nature of civil proceedings *see* **Exhibit V**. Pursuant to 750 ILCS 60/103, the CIVIL definition of domestic violence "does not include reasonable direction of a minor child by a parent" *see* **Exhibit W**, and "interference with personal liberty" means committing or threatening physical abuse, harassment, intimidation, or willful deprivation. Pursuant to 720 ILCS 5/12-3.2 & 3.3; 725 ILCS 5/112A-3 criminal aggravating domestic violence is "great bodily harm","permanent disability, disfigurement or strangulation" *see* **Exhibit X**. Despite the fact that the investigation documented lack of inculpatory evidence the parents Avangelina Cazares and Josue Turcios were still indicated for "allegation 82 environmental neglect" and "allegation #60 environmental injurious" on June 28th, 2019.

**1.    Where did the events giving rise to your claim(s) occur?** The facts set forth in this statement of claim commenced in Chicago, Illinois. On April 30th, 2019, DCFS Child Protection Specialist Halema Townsend visited the dwelling located at 714 W. 95th St Chicago, IL 60628 on the basis of an anonymous hotline call. At approximately 12:00pm, Avangelina Cazares (the mother of the minors) approached the door with caution and raised the blinds to identify the person knocking on the door. Halema Townsend identified herself as a DCFS investigator and said "If I do not see your children within 24 hours I will contact The Department of Human Services and the State of Illinois will stop any welfare services that you are receiving including any medicaid." Avangelina Cazares reluctantly opened the door in a state of duress, in part due to the concern that the family's medicaid benefits would stop, thus preventing the family from receiving necessary medical care. Under the condition that the unidentified woman stay at the doorway, Avangelina Cazares agreed to briefly speak to Halema Townsend. Avangelina noted that she was tending to Camille Turcios for lunch and had a shelving project to work on later that day, which would prevent her from talking at length with Halema Townsend. Avangelina Cazares apologized for the mess and explained there was a roof leak in the living room which required Avangelina to remove the heavy items from the rolling shelving cart to access the corner. The items from the shelving cart were placed on the table in the living room which made the living room appear cluttered. There was also a gently used twin mattress with a memory foam topper on the floor in the living room because it was being donated. The minor Anubis Tello requested a new gel foam mattress. Halema Townsend asked for Avangelina's identification, which was provided. However, Halema Townsend failed to provide employment identification and instead only provided a business card. Halema Townsend said she was investigating a report of ongoing domestic violence, and Anubis Tello was once seen with bruises. Avangelina Cazares told Halema Townsend that she was aware of an unfounded investigation regarding Josue Turcios. Halema Townsend asked Avangelina demographic information such as where the kids went to school, income, and any physical/mental disabilities. Avangelina explained she was getting short-term partial wage continuation for her physical restrictions. Halema Townsend then told Avangelina Cazares that she "would need to come back to see the older children and husband." Avangelina Cazares, said "Sure, today is not a good day since Phoenix Tello has an after school program and my husband's schedule is busy because he is in college and needs to study." Halema Townsend accused Avangelina Cazares of being "uncooperative" and then Avangelina told Halema that she was making false statements against Avangelina. Avangelina made Halema aware of her discomfort in Ms. Townsend's presence and called 911 to have the police in her home. As soon as Avangelina Cazares walked over to her cell phone and then Halema Townsend stepped further in Avangelina's home without her permission and took photos of her living room. Halema Townsend said "Clean this shit up!" in a very unprofessional manner. As Avangelina Cazares was making the phone call to the Chicago police department, Halema Townsend said "Fuck this shit!" and she exited the living room. Halema Townsend slammed the front door. Her work bag/purse was stuck behind the door which caused the bag to bounce onto the frame of the door between the door. As a result of the door being slammed multiple times in attempts to retrieve the bag caught during the door slams the wood on the side of the new door was cracked. Avangelina conversed with the DCFS supervisor Sharon Richardson regarding Halema's unprofessional behavior and Sharon Richardson instead recommended that the police assist with removing Camille Turcios the 1 year old from the home. The police arrived on the scene about an hour later and multiple phone calls. The police officers that arrived on the scene were neutral and trying to understand the situation. Avangelina, explained to them that Halema Townsend was making false allegations that I was being uncooperative. The police went outside and spoke to Halema Townsend, then came back to the home and asked if they could check my home to make sure the living conditions were safe and check the baby. Halema Townsend told the police officers that the minor was sleeping in the living room on the mattress, however she had never addressed that with Avangelina, while in the home. Avangelina, agreed to let the police check the house because there was nothing to hide. The policemen agreed that the home was not in squalid conditions after inspecting the home and the baby which the police body cameras would reflect this footage. I explained that we had projects going on in part due to the closet shelving system defects and other projects. The policeman said "I did not have to explain." The policeman also said "We are not in the business of removing children." The police did not remove the minor Camille Turcios and provided Avangelina Cazares with a police report for criminal damage to property resulting from the door slamming. Granted there was some disorganization, but the fact of the matter is the family has low income and would have benefitted from Norman Services via a cash payment that would assist the family with $800.00 necessary for the roof repair. Avangelina, later spoke to Charlotte Robinson the AA at DCFS regarding the incident that transpired that day, however there was no resolution and the matter was not resolved by the advocacy office.

**2.** **What date and approximate time did the events giving rise to your claim(s) occur?** On May 1st, 2019, DCFS Investigator Halema Townsend took protective custody of the minors Phoenix Tello (12 years old) and Anubis Tello (11 years old) without permission of the primary custodial mother and without probable cause. The minors were removed from their elementary school Rudyard Kipling located at 9351 S Lowe Ave, Chicago, IL 60620 at approximately 3:00pm and taken to their paternal grandparents home located at 943 W. 33rd Place Chicago, IL 60608 without notifying Avangelina Cazares. The children did not come home from school so Avangelina Cazares called Mrs. LaShawnda Bishop, the school principal, and asked where the children were. Mrs. Bishop replied "DCFS was here earlier and the investigator said she had an emergency and could not get ahold of you. Mrs. Bishop said that the paternal grandparents were on the emergency contact list and were called to pick them up. Mrs. Bishop also said that when DCFS gets involved Chicago Public Schools cannot get involved. At approximately 3:45pm, Avangelina Cazares called Halema Townsend regarding the children; Halema told Avangelina to contact her supervisor Sharon Richardson before promptly hanging up the phone. Soon thereafter, Avangelina called Sharon Richardson; Sharon reported she had an emergency to attend and could not conduct the phone call. Avangelina Cazares contacted the paternal grandparents Carlos Tello and Maria Tello via telephone looking for the kids and their paternal uncle Francisco Tello answered the phone at approximately 4:00pm. He said "No one is trying to take your kids. They are here with me and my parents. My father has paperwork that gives him custody of the kids and we are on our way to Indiana where I live." Avangelina Cazares requested to see the "paperwork" and Francisco Tello refused to provide any information on alleged paperwork. Francisco Tello instructed Avangelina Cazares to obtain a court order signed by a judge to have her children returned to her. Later in the late afternoon approximately 6:00pm a DCFS employee arrived at Avangelina's home and showed up with the police. Avangelina asked for the officers name and the DCFS employee's name, however they refused to provide identifying information. The unidentified DCFS employee pointed at Avangelina's dry scab and falsely accused her of being injured in the home. He tried taking protective custody of the minor without probable cause. The DCFS employee and police officer left after Avangelina refused to give them Camille Turcios. That evening Avangelina, Josue, and Camille went to the emergency room to get a medical clearance and were released with no physical signs of abuse or neglect. The next day on May 2nd, Avangelina Cazares went to the Daley Center located at 50 W Washington St Chicago, IL 60602 to obtain an emergency ex-parte court order from the Domestic Relations Division. Judge Myron F. Mackoff, entered an order requesting the paternal grandparents be returned back to Avangelina Cazares and suspended German Tello's parental rights pending future court dates. German Tello lives in Tennessee or Kentucky and refused to be truthful regarding his address because he does not want to be sought after for child support. The minors have been living with Avangelina Cazares since birth with occasional parental assistance from German Tello when he was living with his parents. Judge Myron F. Mackoff was aware that Josue Turcios was previously under DCFS investigation, the conclusion of which was an unfounded allegation. Judge Mackoff was also aware of the petition for allocation of parental rights filed on May 2nd, 2019 for the minors Phoenix Tello, and Anubis Tello. Later that day, Sharon Richardson contacted Avangelina Cazares and said she would be sending her information via an email. At around 5:30pm Avangelina Cazares received an email from Sharon Richardson; Avangelina did not get a chance to read the email until about 9:00pm. The email contained a notice for a shelter care hearing for the minors Phoenix Tello and Anubis Tello. Josue Turcios was not listed on the notice and Camille Turcios was not listed as a minor requiring a shelter care hearing. Avangelina Cazares went to the parental grandparents home around 6:30pm and requested police assistance to retrieve the minors from the grandparents home and provided the court order to the Chicago Police. The Chicago Police seemed to agree that the children should be returned to Avangelina Cazares; however, DCFS insisted that another DCFS investigator meet at the paternal grandparents' residence. At approximately 8pm David Ruano told the police that there was a new investigation for the same allegations which involved both Avangelina Cazares and Josue Turcios because we reside together, therefore he had to re-take protective custody of all the minors. Avangelina Cazares requested the CANTS8 document regarding the allegations because she had not been provided any information regarding the current investigation and protective custody details from Halema Townsend and was unaware that the same allegations would be re-investigated under Allegation #60. David Ruano stated that he was unaware of the specific details regarding the investigation. Later that evening, David Ruano went to Avangelina's home with the police to remove Camille Turcios (1 year old) from the home without probable cause; Avangelina refused to hand over the child to DCFS. David Ruano said that a warrant for the removal of Camille will be requested on May 3rd, 2019 in court the following day.

**3. What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)** On May 3rd, 2019 Avangelina Cazares was present at 1100 S. Hamilton for a shelter care hearing which the notice indicated that if the primary custodian was not present to retrieve the minors that they would be placed into the guardianship of the DCFS Guardianship Administrator Janet Lee Wukas Ahern. Halema Townsend approach Avangelina in the lobby of the building and provided her with a physical copy of the shelter care hearing notice and told Avangelina "The case is being screened in and there will be a hearing." Halema also provided a copy of the CANTS8 form and said she added another allegation to the investigation for #82 environmental neglect. Halema, asked for Josue Turcios's contact information and asked if he could show up right now. Avangelina, explained Josue was with the minor Camille Turcios. The affidavit submitted by Halema Townsend states the following information; The events that brought the case to the attention of DCFS at this time were that the mother had prior knowledge of the prior incident that involved the minor sustaining bruises and was dishonest. Halema, does not make a claim how Avangelina was dishonest. Further, the mother is directly involved in the on going and escalating domestic violence in the home when the children are present. Halema does not say how Avangelina is directly involved in the domestic violence and does not say how the minors are/were involved in the domestic violence. Halema states that the children express fear of their mother and the home is cluttered which presents a hazard to the children. Halema has considered placing the children and removing them from the home because the child victims cannot return home due to concerns involving mothers unwillingness to protect the children due to her involvement in the on going and escalating domestic violence. The home is cluttered and presents hazards to the children. Halema has checked the boxes on the affidavit that she is the DCFS investigator, the information obtained is based on information received from other sources, which she believes to be true, and under no circumstances no efforts would prevent placement of the child. Halema swears under penalties provided by law that; the child will be placed at substantial risk for physical injury/environmental injurious if they remain in the care of their biological mother, the home is cluttered and presents hazards, and the mother does not see the home and being environmental hazardous to the children involved. Halema, has removed the minors from the primary custodian on the basis of information received by an anonymous hotline call without any probable cause and admissible evidence of abuse or neglect. The affidavit does not describe how the minors would be at risk for great bodily harm. The petition alleged substantial risk and environmental neglect on the petition but did not list any facts or claims to rebut. The shelter care hearing did not take place on May 3rd, 2019 for Phoenix Tello and Anubis Tello as indicated on the petition. The notice shelter care hearing What happened in the court room was that a temporary custody hearing commenced for Camille Turcios without prior knowledge this would take place and without notifying the other parent Josue Turcios whom was not present. Avangelina Cazares, was not summoned in court or provided a copy of the petition for adjudication of wardship and either was Josue Turcios the father of Camille Turcios. On May 3rd, a petition for adjudication of wardship was entered, however was not disclosed to Avangelina Cazares or Josue Turcios which was later discovered several weeks later in the court file. Temporary custody orders were entered for Camille Turcios, Phoenix Tello, and Anubis Tello and the matter was continued to May 10th due to the investigator Halema Townsend needing to leave town because she said "Her mother was in the ICU for epileptic seizures." On May 10th, 2019 the investigator did not attend court due to claims that her mother passed away. The prosecutor claimed that Halema Townsend would need to be present for a temporary custody hearing, however future court dates never requested Halema's testimony when she was present. On June 7th Avangelina petitioned for an emergency writ of Habeas Corpus that was denied Avangelina argued that reasonable efforts were not made to prevent the removal of the minors and there was no immediate and urgent necessity. On June 20th, the paternity test results revealed that Josue Turcios is in fact the father of Camille Turcios. The Integrated Assessment was supposed to be addressed in a hearing scheduled for July 15th. However, the IA had not been completed by that point and a new hearing was scheduled for July 23rd. The IA was still incomplete as of July 23rd. Status updates regarding the three minor children were given on both July 15th and July 23rd. As of August 16th, DCFS still has not issued a service plan, thus still has not made any reasonable efforts to reunify the family. On May 10th, 2019 DCFS caseworker Erick G. Gonzalez selected a service plan goal without a service plan on file. The Goal Return Home Pending Status Hearing: IL Title 89 Section 315.215(c)(3) *see* **Exhibit Y** This goal is not available for selection by a caseworker. The Integrated Assessment completed on August 16th, requests concurrent planning. IL Title 89 Section 315.245(b)(1)(2)(3)(4)(5)(6)(7)(8) *see* **Exhibit Z** Concurrent Planning Criteria for Selection of Cases is not applicable to the circumstances surrounding the allegations of Environmental Injurious #60 and Environmental Neglect #82 listed in IL Title 89 Section 300.APPENDIX B.

## IV.    Grounds for Removal

Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S. Code § 1367. Supplemental jurisdiction except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.Step one of Gibbs deals with the court's "power" to hear local law claims — its jurisdiction — when the case raises a "substantial" federal issue and the federal and local law claims "derive from a common nucleus of operative fact" and "are such that [the plaintiff] would ordinarily be expected to try them all in one proceeding." Gibbs, 383 U.S. at 725. The federal courts' subject matter jurisdiction, to the extent Congress authorizes it, is derived directly from Article III, Section 2, extending the judicial "Power" to "all Cases in Law and Equity arising under this Constitution, the Laws of the United States. . . ." U.S. Const. art. III, Section(s) 2; see also Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 807 (1986); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395-96 (1980). See Gibbs, 383 U.S. at 725; Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 821-23 (1824). Gibbs's requirements of a substantial federal claim, a common nucleus of operative fact, and the expectation of one trial, 383 U.S. at 725, "serve as an operational definition of the `one constitutional "case"' language." *LaShawn A. v. Barry, 87 F.3d 1389 (D.C. Cir. 1996)* Concluding that a common nucleus existed because the state and federal claims related to the city's allegedly inept administration of its foster care system.

## V.    Other Requirements for Removal are Satisfied

The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. The defendants were required to be served via summons either by service of process or physically served a copy of the summons and initial pleading upon initial appearance in court. There is no summons on the record of the court where the proceedings commenced. *Gibbons v. Bristol-Myers Squibb Co., No. 17-2638 (2d Cir. 2019)* the court unanimously affirmed the district court's holding that 33 cases were properly removed to federal court and that the claims were impliedly preempted by FDA labeling rules. The court evaluated the practice of removal before service to remove cases before the plaintiffs can "properly . . . serve[]" them. The State of Illinois, Department of Children and Family services had sufficient time and opportunity to properly summons and serve the defendants via service of process of personally in court. When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action. The defendants have not been served, however the defendants Avangelina Cazares and Josue Turcios do not dispute the being parties to the case. Even though § 1446(b)(1) states the 30-day limitation period runs upon "the receipt by the defendant, through service or otherwise, of a copy of the initial pleading," the Supreme Court held that the clock cannot start running until after service of process. The Eleventh Circuit interpreted the Supreme Court decision in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999)*.

**VI.    Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.    For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may
be    served. I understand that my failure to keep a current address on file with the Clerk's Office may result
in the dismissal of my case.

Date of signing:    19 August 2019                    August 19, 2019

Signature of Defendants

Defendants Printed Name    Josue Turcios            Avangelina Cengrca

**B.    For Attorneys**

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

STATE OF ILLINOIS

COUNTY OF COOK                    SS        Family Folder #                    Calendar:

Exhibit A

DCFS MARS/CYCIS # P2781905

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

IN THE INTEREST OF              |  JUVENILE NO.:

Camille Turcios                 |
                                |        19JA000454
Minor.                          |

PETITION FOR ADJUDICATION OF WARDSHIP

0001 X  original              0011 __ supplemental            0021 __ supplemental

Now comes KIMBERLY M. FOXX, through her assistant, and petitions this Court to adjudicate Camille Turcios a ward of the court. In support, petitioner, on oath or affirmation, based on information or belief states as follows:

1.    Camille Turcios is a female minor born on September 23, 2017, and who resides or may be found in this County at 714 West 95th St, Chicago, Illinois 60628.

2.    The names and residence addresses of the minor's parents, legal guardian, and/or custodian are:

Mother's Name:        Avangelina Cazares
Residence Address     714 West 95th St
City, State, Zip      Chicago, Illinois 60628

Father's Name:        Josue Turcios                And All Whom It May Concern.
Residence Address     714 West 95th St
City, State, Zip      Chicago, Illinois 60628

Legal Guardian:
Residence Address
City, State, Zip

Custodian:
Residence Address
City, State, Zip

The minor and the persons named in this paragraph are designated respondents.

3.    The Minor was:
      7226   not taken into custody

4.    A Temporary Custody Hearing has been set for May 3, 2019 at 11:00 AM.



| Source of Complaint | | Cal | Sex |
|---|---|---|---|
| 7 U | | | F |
| Identification Number | | | In Custody |
| Court Date | Activity Code | | Judge Code or Room |
| 5 3 19 | 702,705 | | |

Exhibit A

5.    The minor was neglected pursuant to Juvenile Court Act, section

0702 405/2-3(1) (b); she is a minor under 18 years of age whose environment is injurious to her welfare.

The facts supporting this are:

This minor's siblings report an ongoing issue of domestic violence in the home while the children are present. This minor's siblings state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by this minor's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of this minor's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to this minor. Mother further disclosed that minor's father is dealing with depression and at times is paranoid. Mother attempted to remove this minor's siblings from their placement after protective custody was taken. Parents reside together.

6.    The minor was abused in that his/her parent or immediate family member, or any person responsible for his/her welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent, pursuant to the Juvenile Court Act section

0705 405/2-3(2) (ii); Creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function.

The facts supporting this are:

This minor's siblings report an ongoing issue of domestic violence in the home while the children are present. This minor's siblings state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by this minor's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of this minor's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to this minor. Mother further disclosed that minor's father is dealing with depression and at times is paranoid. Mother attempted to remove this minor's siblings from their placement after protective custody was taken. Parents reside together.

7.    1131 The minor **is** not the subject of another child custody proceeding or visitation order or has possible Indian Tribal affiliation. See Attached Exhibit.

WHEREFORE, petitioner prays that the minor be adjudged a ward of the Court and that the Court enter such orders as are in the best interests of the minor, and other relief under the Juvenile Court Act.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Petitioner:

KIMBERLY M. FOXX,
State's Attorney of Cook County,
Through her assistant

Daniela Silaides

| May 3, 2019 | 10:45 AM |
| --- | --- |
| DATE | TIME |

Attorney for the People of the State of Illinois
1100 South Hamilton Avenue - 6th floor
Chicago, Illinois 60612
Attorney No. 33182

FILED

2019 MAY -3 AM 11:11

Exhibit B

DCFS MARS/CYCIS # P2781904

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
## CHILD PROTECTION DIVISION

IN THE INTEREST OF                          JUVENILE NO.:

Anubis Tello

## 19JA000455

Minor.

### PETITION FOR ADJUDICATION OF WARDSHIP

0001 X  original                0011 _ supplemental                0021 _ supplemental

Now comes KIMBERLY M. FOXX, through her assistant, and petitions this Court to adjudicate Anubis Tello a ward of the court. In support, petitioner, on oath or affirmation, based on information or belief states as follows:

1.  Anubis Tello is a male minor born on December 26, 2007, and who resides or may be found in this County at 5001 South Michigan Ave, Chicago, Illinois 60615.

2.  The names and residence addresses of the minor's parents, legal guardian, and/or custodian are:

Mother's Name:          Avangelina Cazares
Residence Address       714 West 95th St
City, State, Zip        Chicago, Illinois 60628

Father's Name:          German Tello                And All Whom It May Concern
Residence Address       514 Patricia Ln
City, State, Zip        Oak Grove, Kentucky 42262

Legal Guardian:                                                     FILED
Residence Address                                                   2019 MAY -3 AM 11:11
City, State, Zip

Custodian:
Residence Address
City, State, Zip

The minor and the persons named in this paragraph are designated respondents.

3.  The Minor was:
    7126  taken into custody on May 1, 2019, at 3:16 PM.

4.  A Temporary Custody Hearing has been set for May 3, 2019 at 11:00 AM.



| Source of Complaint | Cal | Sex |
|---|---|---|
| 770 | | M |

| Identification Number | In Custody |
|---|---|
| | |

| Court, Date | Activity Code | Judge Code or Room |
|---|---|---|
| 5 3 19 | 702, 705, 708 | |

0702 405/2-3(1) (b); he is a minor under 18 years of age whose environment is injurious to his welfare.

EX B

The facts supporting this are:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

6. The minor was abused in that his/her parent or immediate family member, or any person responsible for his/her welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent, pursuant to the Juvenile Court Act section

0705 405/2-3(2) (ii); Creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function.

The facts supporting this are:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

0708 405/2-3 (2) (v); Inflicts excessive corporal punishment.

FILED

The facts supporting this are:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and

minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

7.　1130 The minor **is** the subject of another child custody proceeding or visitation order or has possible Indian Tribal affiliation. See Attached Exhibit.

WHEREFORE, petitioner prays that the minor be adjudged a ward of the Court and that the Court enter such orders as are in the best interests of the minor, and other relief under the Juvenile Court Act.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Petitioner:

KIMBERLY M. FOXX,
State's Attorney of Cook County,
Through her assistant

Daniela Silaides

May 3, 2019　　　　　10:36 AM
DATE　　　　　　　　　TIME

Attorney for the People of the State of Illinois
1100 South Hamilton Avenue - 6th floor
Chicago, Illinois 60612
Attorney No. 33182

FILED

2019 MAY - 3 AM 11: 11



STATE OF ILLINOIS

COUNTY OF COOK          SS      Calendar:

Family Folder #

Exhibit C

DCFS MARS/CYCIS # P2781903

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

IN THE INTEREST OF          |     JUVENILE NO.:

Phoenix Tello

19JA0004 5Ø

Minor.

## PETITION FOR ADJUDICATION OF WARDSHIP

0001 X original          0011 _ supplemental          0021 _ supplemental

Now comes KIMBERLY M. FOXX, through her assistant, and petitions this Court to adjudicate
Phoenix Tello a ward of the court. In support, petitioner, on oath or affirmation, based on information or
belief states as follows:

1.  Phoenix Tello is a female minor born on February 5, 2007, and who resides or may be found in
    this County at 5001 South Michigan Ave, Chicago, Illinois 60615.

2.  The names and residence addresses of the minor's parents, legal guardian, and/or custodian are:

Mother's Name:      Avangelina Cazares
Residence Address    714 West 95th St
City, State, Zip       Chicago, Illinois 60628

Father's Name:       German Tello             And All Whom It May Concern
Residence Address    514 Patricia Ln
City, State, Zip       Oak Grove, Kentucky 42262

Legal Guardian:
Residence Address
City, State, Zip

Custodian:
Residence Address
City, State, Zip

FILED

2019 MAY -3 AM 11: 12

The minor and the persons named in this paragraph are designated respondents.

3.  The Minor was:
    7126   taken into custody on May 1, 2019, at 3:16 PM.

4.  A Temporary Custody Hearing has been set for May 3, 2019 at 11:00 AM.



| Source of Complaint | Cal | Sex |
|---|---|---|
| 770 | | F |
| Identification Number | | In Custody |

| Court Date | Activity Code | Judge Code or Room |
|---|---|---|
| 5 3 19 | 702 705 | |

5.     The minor was neglected pursuant to Juvenile Court Act, section

0702 405/2-3(1) (b); she is a minor under 18 years of age whose environment is injurious to her welfare.

The facts supporting this are:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

6.     The minor was abused in that his/her parent or immediate family member, or any person responsible for his/her welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent, pursuant to the Juvenile Court Act section

0705 405/2-3(2) (ii); Creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function.

The facts supporting this are:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

7.     1130 The minor **is** the subject of another child custody proceeding or visitation order or has possible Indian Tribal affiliation. See Attached Exhibit.



WHEREFORE, petitioner prays that the minor be adjudged a ward of the Court and that the Court enter such orders as are in the best interests of the minor, and other relief under the Juvenile Court Act.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Petitioner:                                    KIMBERLY M. FOXX,
                                               State's Attorney of Cook County,
                                               Through her assistant

                                               Daniela Silaides


                                               May 3, 2019              10:36 AM
                                               DATE                     TIME


Attorney for the People of the State of Illinois
1100 South Hamilton Avenue - 6th floor
Chicago, Illinois 60612
Attorney No. 33182

FILED

2019 MAY -3 AM11:12



Exhibit D

**(705 ILCS 405/3-17) (from Ch. 37, par. 803-17)**

Sec. 3-17. Summons. (1) When a petition is filed, the clerk of the court shall issue a summons with a copy of the petition attached. The summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition, except that summons need not be directed to a minor respondent under 8 years of age for whom the court appoints a guardian ad litem if the guardian ad litem appears on behalf of the minor in any proceeding under this Act.

(2) The summons must contain a statement that the minor or any of the respondents is entitled to have an attorney present at the hearing on the petition, and that the clerk of the court should be notified promptly if the minor or any other respondent desires to be represented by an attorney but is financially unable to employ counsel.

(3) The summons shall be issued under the seal of the court, attested to and signed with the name of the clerk of the court, dated on the day it is issued, and shall require each respondent to appear and answer the petition on the date set for the adjudicatory hearing.

(4) The summons may be served by any county sheriff, coroner or probation officer, even though the officer is the petitioner. The return of the summons with endorsement of service by the officer is sufficient proof thereof.

(5) Service of a summons and petition shall be made by: (a) leaving a copy thereof with the person summoned at least 3 days before the time stated therein for appearance; (b) leaving a copy at his usual place of abode with some person of the family, of the age of 10 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the person summoned at his usual place of abode, at least 3 days before the time stated therein for appearance; or (c) leaving a copy thereof with the guardian or custodian of a minor, at least 3 days before the time stated therein for appearance. If the guardian or custodian is an agency of the State of Illinois, proper service may be made by leaving a copy of the summons and petition with any administrative employee of such agency designated by such agency to accept service of summons and petitions. The certificate of the officer or affidavit of the person that he has sent the copy pursuant to this Section is sufficient proof of service.

(6) When a parent or other person, who has signed a written promise to appear and bring the minor to court or who has waived or acknowledged service, fails to appear with the minor on the date set by the court, a bench warrant may be issued for the parent or other person, the minor, or both.

(7) The appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court. A copy of the summons and petition shall be provided to the person at the time of his appearance.

(Source: P.A. 86-441.)

*Exhibit E*

**STATE OF ILLINOIS** )
) **SS**
**COUNTY OF** COOK )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT, JUVENILE DIVISION

**In the interest of** )
Phoenix Tello
Anubis Tello )
)
) **No.**
**a minor(s)** )

### NOTICE TO PARENTS AND CHILDREN OF SHELTER CARE HEARING
(presented to:)

**Mother:** Avangelina Cazares _____

**Address:** 714 W 95TH Street _____

Chicago, IL 60628 _____

_____

**Father:** German Tello _____ **GAL:** Robert Harris _____

**Address:** 514 Patricia Ln _____

Oak Grove, Ky 42262-7234 _____

_____

**On** May 3,2019 _____ **at** 10:00 AM , **before the**

**Honrable** _____ **(address):** 1100 S. Hamilton, Chgo, IL 60612

Please ask at front desk _____

**The State of Illinois will present evidence (1) that (name of child or children:)**

Phoenix Tello

Anubis Tello _____ **are abused, neglected or dependent**

**for the following reasons:** substantial risk and environmental neglect _____

**and (2) that there is "immediate and urgent necessity" to remove the child or children from the responsible relative.**

**YOUR FAILURE TO APPEAR AT THE HEARING MAY IN REASULT IN PLACEMENT OF THE CHILD OR CHILDREN IN FOSTER CARE UNTIL A TRIAL CAN BE HELD. A TRIAL MAY NOT BE HELD FOR UP TO 90 DAYS.**

**STATE OF ILLINOIS** )
)  **SS**
**COUNTY OF** <u>COOK</u> )

*ƏxƐ*

## IN THE CIRCUIT COURT OF <u>C</u> COUNTY
## COUNTY DEPARTMENT, JUVENILE DIVISION

**In the interest of** )
Phoenix Tello
Anubis Tello )
)
) **No.**
**a minor(s)** )

### AFFIDAVIT OF SERVICE OF NOTICE TO PARENTS AND CHILDREN OF
### SHELTER CARE HEARING AND NOTICE OF CHILDREN'S AND PARENT'S RIGHTS

I, <u>HALEMA TOWNSEND</u> , a person of sound mind over the age of 18, being first duty sworn under oath hereby state:

1. On _____ at _____, I personally served the DCFS Notice to Parents and Children of Shelter Care Hearing and Notice of Children's and Parent's Rights to _____, a ☐ female ☒ male _____, at _____
   <span style="font-size:smaller">(race or ethnicity)</span>
   _____, Illinois, _____. The relationship to the
   <span style="font-size:smaller">(type of dwelling)</span>
   respondent is _____.
   <span style="font-size:smaller">(self, household member)</span>

2. On _____ at _____, I attempted to serve the DCFS Notice to Parents and Children of Shelter Care Hearing and Notice of Children's and Parent's Rights to _____ at _____
   <span style="font-size:smaller">(address)</span>
   The reason that service is not effected is _____

3. On <u>05/01/2019</u> at <u>3:30 PM</u> , I orally informed <u>German Tello</u> ,
   a ☐ female ☒ male <u>Hispanic</u> , ☐ in person ☒ by telephone ☐ other _____
   <span style="font-size:smaller">(race or ethnicity)</span>
   of the date, time and place of the shelter care hearing. Written notification was unreasonable because <u>he resides out of state</u>

4. **This information is true and accurate to the best of my personal knowledge, and I can so testify**

**Subscribed and sworn to**
**Before me this** _____ **day**
**Of** _____, **19** ____.                   _____
                                                                            **Affiant**

_____                 **Address: DCFS Court Liaison Unit_____**
            **Notary Public**                                     **Juvenile Court of Cook County_____**
                                                                 **1100 South Hamilton Ave._____**
                                                                 **Chicago, IL 60612_____**
                                                                 _____

**At the Shelter Care Hearing, parents have the following rights:**

1. **To ask the court to appoint a lawyer if they cannot afford one.**
2. **To ask the court to continue the hearing to allow them time to prepare.**
3. **To present evidence concerning:**
   a. **Whether or not the child or children were abused, neglected or dependent.**
   b. **Whether or not there is "immediate and urgent" necessity to remove the child from home (including: their ability to care for the child, conditions in the home, alternative means of protecting the child other than removal).**
   c. **The best interests of the child.**
4. **To cross examine the State's witness.**

**At the Shelter Care Hearing, children have the following rights:**

1. **To have a guardian ad litem appointed.**
2. **To be declared competent as a witness and to present testimony concerning:.**
   a. **Whether they are abused, neglected or dependent.**
   b. **Whether there is "immediate and urgent" necessity to be removed from home.**
   c. **Their best interests.**
3. **To cross examine witnesses for other parties.**
4. **To obtain an explanation of any proceedings and orders of court.**

**Illinois Department of Children and Family Services**

Cook      **Region**

Child Protection
**(Office)**
2033 S. Indiana
**(Address)**
Chicago , **IL** 60616
**(City)   (Zip Code)**

| | |
|---|---|
| HALEMA TOWNSEND | HALEMA TOWNSEND |
| 15115 S DIXIE HIGHWAY | 15115 S. Dixie Hwy |
| **(Name and Address of Person Taking Protective Custody)** | **(Name and Address of DCFS Investigator)** |

- **If you do not understand English very well or if you need a sign language interpreter, please let someone know right away.**
- **If you do not come to the hearing, the judge will send you information about what has been decided.**
- **During the next 48 hours, you can learn about you children by calling (**312**)** 808-5000
  **Area Code          VOICE/TDD**
- **If you learn about your children's temporary protective custody during this 48 hours and you want the hearing to be held sooner, call (**312**)** 738-7000 **at** States Attorney's Office .
  **Area Code   VOICE/TDD**

**STATE OF ILLINOIS** )
) **SS** *ex.E*
**COUNTY OF** COOK )

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, JUVENILE DIVISION

**In the interest of** )
Phoenix Tello
Anubis Tello )
)
) **No.**
**a minor(s)** )

### NOTICE OF PARENTS' AND CHILDREN'S RIGHTS
### TO REHEARING ON TEMPORARY CUSTODY

If you were not present at and did not have adequate notice of the Shelter Care Hearing at which temporary custody of
**Phoenix Tello**
**Anubis Tello**_____ **was**
**awarded to JANET AHERN**_____ **, you have the right**
to request a full rehearing on whether the State should have temporary custody of
**Phoenix Tello**
**Anubis Tello**_____ . To request this rehearing you must file an affidavit with the Clerk of the
**Juvenile Court:**
**(address)** 1100 S. Hamilton_____ **in person setting forth the following:**

    1.    **That you were not present at the shelter care hearing.**
    2.    **That you did not get adequate notice (explaining how the notice was inadequate).**
    3.    **Your signature.**
    4.    **Signature must be notarized.**

The rehearing should be scheduled within 48 hours, excluding court holidays and weekends of your filing this affidavit.

At the rehearing, your rights are the same as the initial shelter care hearing. The enclosed notice explains those rights. Attached is a sample affidavit in support of a rehearing on temporary custody you may use.

**Illinois Department of Children and Family Services**
Cook_____ **Region**

(Geographic) Investigation_____
                    **(Office)**
2033 S. Indiana_____
                    **(Address)**
Chicago_____ **, IL** 60616___
       **(City)**              **(Zip Code)**
808-4000_____
         **(Telephone—VOICE/TDD)**

**STATE OF ILLINOIS**      )
                            )   **SS**     *ex. E*

**COUNTY OF** <u>COOK</u>       )

### IN THE CIRCUIT COURT OF <u>COOK</u> COUNTY
### COUNTY DEPARTMENT, JUVENILE DIVISION

**In the interest of**            )
Phoenix Tello
Anubis Tello               )
                            )
                            )   **No.**

**a minor(s)**                )

### AFFIDAVIT IN SUPPORT OF A REHEARING ON TEMPORARY CUSTODY
### PURSUANT TO ILLINOIS REVISED STATUTES 1992,
### CH. 37, PARS. 802-10 (3), (4), 803-12 (3), (4)

**The affiant, being duty sworn on oath, deposes as follows:**

1.     **S/he is the ☐ parent, ☐ guardian, ☐ legal custodian, ☐ minor age 8 or over, or**

       **☐ counsel (check applicable only) in this cause.**

2.     **The affiant was not present at the shelter care hearing.**

3.     **The affiant did not receive adequate notice in that:**

_____

4.     **Further the affiant sayeth naught.**


_____          _____

          **DATE**                                   **AFFIANT**


**Subscribed and sworn before me**

**this _____ day of _____, 19____**


_____

          **Notary Public**

### NOTICE TO:
**Clerk of the Circuit Court of** <u>Cook</u>           **County, Juvenile Division**
**The affiant hereby requests that this matter be placed in the appropriate calendar for a
rehearing issue of temporary custody no later than 48 hours, excluding court holidays,**

*Exhibit F*

22 Child Protection Warrant Minor Under the Temporary
Custodianship or Guardianship of DCFS Guardianship Administrator

(Rev. 3/20/09) CCJP 0644

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
## CHILD PROTECTION DIVISION

IN THE INTEREST OF

Camille Turcios              } No. *19 JA 454*

A Minor

## CHILD PROTECTION WARRANT
## MINOR UNDER THE TEMPORARY CUSTODIANSHIP OR
## GUARDIANSHIP OF DCFS GUARDIANSHIP ADMINISTRATOR

To any law enforcement officer:

YOU ARE COMMANDED to take custody of *Camille Turcios*
a minor, and bring him/her to the DCFS Children's Reception Center located at 5001 S. Michigan Ave. Chicago, Illinois. Be advised that findings of probable cause and urgent and immediate necessity exist to believe that this minor is at risk.

To the DCFS Representative:

With twenty-four (24) hours, excluding holidays and weekends, of the minor being brought to the Children's Reception Center, the caseworker and/or DCFS legal shall inform the judge who issued the Child Protection Warrant, or any judge sitting in that judge's stead that the minor was located and is currently in placement. The judge can either quash the Child Protection Warrant or request that the minor be physically brought before him/her for a hearing under the Juvenile Court Act.

**FILED**
MAY - 3 2019
DOROTHY BROWN
CLERK OF CIRCUIT COURT

*May 3, 2019*

_____
Judge                    Judge's No.

Witness,     *5-3*   *19*

*Dorothy Brown AB*
Clerk of Court

**ENTERED**
JUDGE JOHN L. HUFF - 1988
MAY - 3 2019
(Seal of Court)
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

NAME OF MINOR: *Camille Turcios*

ADDRESS OF MINOR: _____

_____

## CHILD PROTECTION WARRANT

☒ ISSUED      ☐ EXECUTED      ☐ QUASHED AND RECALLED      ☐ EXTENDED
4269            4272              4271                        4371

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ex. 1

**5**

Child Protection Warrant Minor Under the Temporary
Custodianship or Guardianship of DCFS Guardianship Administrator               (Rev. 3/20/09) CCJP 0644

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

IN THE INTEREST OF

*Camille Turcios*                        } No. *19 JA-454*

_A Minor_                                      *12/N*

CHILD PROTECTION WARRANT
MINOR UNDER THE TEMPORARY CUSTODIANSHIP OR
GUARDIANSHIP OF DCFS GUARDIANSHIP ADMINISTRATOR

To any law enforcement officer:

YOU ARE COMMANDED to take custody of *Camille Turcios*
a minor, and bring him/her to the DCFS Children's Reception Center located at 5001 S. Michigan Ave. Chicago,
Illinois. Be advised that findings of probable cause and urgent and immediate necessity exist to believe that this
minor is at risk.

To the DCFS Representative:

With twenty-four (24) hours, excluding holidays and weekends, of the minor being brought to the
Children's Reception Center, the caseworker and/or DCFS legal shall inform the judge who issued the Child
Protection Warrant, or any judge sitting in that judge's stead that the minor was located and is currently in
placement. The judge can either quash the Child Protection Warrant or request that the minor be physically
brought before him/her for a hearing under the Juvenile Court Act.

*5-10*          *19*

FILED
HUFF-1988

*John. Huff*     *1988*
Judge                          Judge's No.

10 2019          Witness,  *5-10*          *19*

MY BROWN
E CIRCUIT COURT
K COUNTY, IL        *Dorothy Brown AB*
Clerk of Court

NAME OF MINOR: *Camille Turcios*

ADDRESS OF MINOR: _____          (Seal of Court)

_____

**CHILD PROTECTION WARRANT**

☐ ISSUED        ☐ EXECUTED        ☒ QUASHED AND RECALLED        ☐ EXTENDED
4269              4272              4271                            4371

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Exhibit G ex.G

(705 ILCS 405/2-10.1) (from Ch. 37, par. 802-10.1)
    Sec. 2-10.1. Whenever a minor is placed in shelter care with
the Department or a licensed child welfare agency in accordance
with Section 2-10, the Department or agency, as appropriate,
shall prepare and file with the court within 45 days of
placement under Section 2-10 a case plan which complies with the
federal Adoption Assistance and Child Welfare Act of 1980 and is
consistent with the health, safety and best interests of the
minor.
    For the purposes of this Act, "case plan" and "service plan"
shall have the same meaning.
(Source: P.A. 94-604, eff. 1-1-06.)

22

Exhibit

Temporary Custody Hearing Order                                    (Rev. 5/16/12) CCJP 0601 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
### CHILD PROTECTION DIVISION

STATE OF ILLINOIS |
COUNTY OF COOK  |                                                        4100

IN THE INTEREST OF

Turcios, Camille

**(Minors)**                          No.   19 JA 454

WM Prej. all Rths                                 Ex Parte ☐ 4367
                                                  Without Prejudice ☐ 4368

### TEMPORARY CUSTODY HEARING ORDER
(705 ILCS 405/2-10)                              Temporary Custody

THIS CAUSE coming to to be heard upon the Motion of **the People** for _____
the Court having jurisdiction over the matter and parties, and being fully advised in the premises:

**THE COURT FINDS:**

1. The minor's

| | | | | | |
|---|---|---|---|---|---|
| Mother received | 7101 ☒ notice | 7201 ☐ no notice and was | 7102 ☒ present | 7202 ☐ not present | |
| Father received | 7103 ☒ notice | 7203 ☐ no notice and was | 7104 ☐ present | 7204 ☐ not present | |
| Guardian/custodian/relative received | | | | | |
| | 7105 ☐ notice | 7205 ☐ no notice and was | 7106 ☐ present | 7206 ☐ not present | |

2. Probable cause

7200  ☐ A. does not exist that the minor is (abused/neglected/dependent); or
7100  ☒ B. does exist that the minor is (abused/neglected/dependent);
         The basis of the finding is: _____

See facts

3. Immediate and urgent necessity

7207  ☐ A. does not exist to support removal of the minor from the home; or
7107  ☒ B. does exist to support removal of the minor from the home and continuation in the home is contrary to the minor's welfare.
         The basis of the finding is: _____

See 2B

4. Reasonable efforts

7108  ☒ A. have been made but have not eliminated the immediate and urgent necessity to remove the minor from the home; or
7108  ☐ B. cannot, at this time, for good cause, prevent or eliminate the immediate and urgent necessity of removal of the minor from the home; or
7108  ☐ C. have been made and have eliminated the immediate and urgent necessity to remove the minor from the home; or
7208  ☐ D. have not been made.
         The basis of this finding is: _____

See 2B

**ENTERED**
JUDGE JOHN L. HUFF - 1988
MAY - 3 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

(OVER)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Case No. 19 JA 454

(Rev. 5/16/12) CCJP 0601 B

**IT IS ORDERED:**

8001 ☐ A. The petition is dismissed.

4122 ☐ B. Consistent with the health, safety and best interests of the minor, the minor shall (be returned to/remain in) the custody of the (mother/father/parents/guardian/responsible relative).

4111 ☑ C. Consistent with the health, safety and best interests of the minor, the minor shall be removed from the home; and
1. Temporary custody of the minor is granted to JCWA

4112 ☐      a. private custodian/guardian _____ whose relationship to the minor is _____ .

4113 ☑      b. DCFS Guardianship Administrator with the right to place the minor

    2. The temporary custodian is authorized to consent to

4124 ☐      a. ordinary and routine medical care AND major medical care* on behalf of the minor
(temporary custody with the right to consent to major medical care).

4125 ☐      b. only ordinary and routine medical care on behalf of the minor (temporary custody without the right to consent to major medical care).

    *Major medical care is defined as those medical procedures which are not administered
or performed on a routine basis and which involve hospitalization, surgery or use of
anesthesia (e.g. appendectomies blood transfusions, psychiatric hospitalizations).

    c. _____
_____
_____

☐ D. A 405/2-25 or 405/2-20 Order of Protection entered this date is incorporated herein against _____

☐ E. DCFS or its assigns shall investigate the need for services in the following areas:
_____
_____
_____

☐ F. If there is a finding of no reasonable efforts under paragraph 4 above, DCFS or its assigns shall make all
reasonable efforts to ameliorate the causes contributing to the finding of probable cause or the immediate and urgent
necessity which led to the removal of this minor from the home. These efforts shall include:
_____
_____

4114 ☑ G. DCFS or its assigns shall prepare and file with the Court on or before WITHIN 45 days
a 45 day Case Plan pursuant to 705 ILCS 405/2-10.1.

    H. The Order on Visiting entered this date or on subsequent dates is incorporated herein by reference.

4119 ☑ I. A Social Investigation shall be filed by WITHIN 30 days

☐ J. A diligent search shall be conducted within 10 days.

☐ K. This matter is sent to mediation. 4990 ☐ Yes 4311 ☐ No If no, reason _____

☑ L. The next hearing set is on: 5 / 10 / 19 , at 9:30 a.m./p.m. for
4123 ☐ presentation of an affidavit of diligent efforts to notify. 4290 ☐ progress report.
4390 ☑ status. 4690 ☐ adjudication hearing. 4491 ☐ Court family conference.
4391 ☑ before the Judge.

4705 ☐ The first permanency hearing date is _____ .

**ENTERED:**

Dated 5.3.19

Judge _____ 1988 Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

23

Temporary Custody Hearing Order    *exhibt I*    (Rev. 5/16/12) CCJP 0601 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
## CHILD PROTECTION DIVISION

STATE OF ILLINOIS |
COUNTY OF COOK |

☒ 4100

IN THE INTEREST OF

Tello, Anubis

(Minors)

No. 19JA-455

Ex Parte ☐ 4367
Without Prejudice ☒ 4368

### TEMPORARY CUSTODY HEARING ORDER
(705 ILCS 405/2-10)

Temporary Custody

THIS CAUSE coming to to be heard upon the Motion of **the People** for _____
the Court having jurisdiction over the matter and parties, and being fully advised in the premises:

**THE COURT FINDS:**

1. The minor's
   Mother received        7101 ☒ notice   7201 ☐ no notice and was        7102 ☒ present   7202 ☐ not present
   Father received         7103 ☒ notice   7203 ☐ no notice and was        7104 ☒ present   7204 ☐ not present
   Guardian/custodian/relative received
                           7105 ☐ notice   7205 ☐ no notice and was        7106 ☐ present   7206 ☐ not present

2. Probable cause
   7200    ☐ A. does not exist that the minor is (abused/neglected/dependent); or
   7100    ☒ B. does exist that the minor is (abused/neglected/dependent);
           The basis of the finding is: _____ See facts
           _____ In Petition _____
           _____

3. Immediate and urgent necessity
   7207    ☐ A. does not exist to support removal of the minor from the home; or Dependent VS
   7107    ☒ B. does exist to support removal of the minor from the home and continuation in the home is contrary to the minor's
           welfare.
           The basis of the finding is: _____
           _____ See 2B
           _____

4. Reasonable efforts
   7108    ☐ A. have been made but have not eliminated the immediate and urgent necessity to remove the minor from the home; or
   7108    ☐ B. cannot, at this time, for good cause, prevent or eliminate the immediate and urgent necessity of removal of the minor
           from the home; or
   7108    ☐ C. have been made and have eliminated the immediate and urgent necessity to remove the minor from the home; or
   7208    ☐ D. have not been made.
           The basis of this finding is: _____
           _____ See 2B
           _____

ENTERED
JUDGE JOHN L. HUFF-1988

MAY - 3 2019

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK                    (OVER)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Case No. 19CA 455

(Rev. 5/16/12) CCJP 0601 B

**IT IS ORDERED:**

8001 ☐ A. The petition is dismissed.

4122 ☐ B. Consistent with the health, safety and best interests of the minor, the minor shall (be returned to/remain in) the custody of the (mother/father/parents/guardian/responsible relative).

4111 ☐ C. Consistent with the health, safety and best interests of the minor, the minor shall be removed from the home; and
    1. Temporary custody of the minor is granted to JCW+

4112 ☐     a. private custodian/guardian _____ whose relationship to the minor is _____.

4113 ☐     b. DCFS Guardianship Administrator with the right to place the minor

    2. The temporary custodian is authorized to consent to

4124 ☐     a. ordinary and routine medical care AND major medical care* on behalf of the minor (temporary custody with the right to consent to major medical care).

4125 ☐     b. only ordinary and routine medical care on behalf of the minor (temporary custody without the right to consent to major medical care).

    *Major medical care is defined as those medical procedures which are not administered or performed on a routine basis and which involve hospitalization, surgery or use of anesthesia (e.g. appendectomies blood transfusions, psychiatric hospitalizations).

    c. _____
    _____
    _____

☐ D. A 405/2-25 or 405/2-20 Order of Protection entered this date is incorporated herein against _____.

☐ E. DCFS or its assigns shall investigate the need for services in the following areas:
_____
_____
_____

☐ F. If there is a finding of no reasonable efforts under paragraph 4 above, DCFS or its assigns shall make all reasonable efforts to ameliorate the causes contributing to the finding of probable cause or the immediate and urgent necessity which led to the removal of this minor from the home. These efforts shall include:
_____

4114 ☐ G. DCFS or its assigns shall prepare and file with the Court on or before WIThIN 45 days a 45 day Case Plan pursuant to 705 ILCS 405/2-10.1.

    H. The Order on Visiting entered this date or on subsequent dates is incorporated herein by reference.

4119 ☐ I. A Social Investigation shall be filed by WIThIN 30 days

☐ J. A diligent search shall be conducted within 10 days.

☐ K. This matter is sent to mediation. 4990 ☐ Yes  4311 ☐ No  If no, reason _____

☐ L. The next hearing set is on: 5/10/19 , at 9:30 a.m./p.m. for
    4123 ☐ presentation of an affidavit of diligent efforts to notify.  4290 ☐ progress report.
    4390 ☐ status.  4690 ☐ adjudication hearing.  4491 ☐ Court family conference.
    RETC  4391 ☐ before the Judge.

4705 ☐ The first permanency hearing date is _____.

**ENTERED:**

Dated 5.3.19

Judge John L Huff 1988
Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

24

*exhibit J*

Temporary Custody Hearing Order          (Rev. 5/16/12) CCJP 0601 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
## CHILD PROTECTION DIVISION

STATE OF ILLINOIS |
COUNTY OF COOK |
                                               ☒ 4100

IN THE INTEREST OF

Tello, Phoenix         No. 19 JA J56

                            (Minors)

                                     Ex Parte ☐ 4367
                      Without Prejudice ☒ 4368

### TEMPORARY CUSTODY HEARING ORDER
(705 ILCS 405/2-10)

*Temporary Custody*

THIS CAUSE coming to to be heard upon the Motion of __the People__ for ____

the Court having jurisdiction over the matter and parties, and being fully advised in the premises:

**THE COURT FINDS:**

1. The minor's

     Mother received    7101 ☒ notice   7201 ☐ no notice and was    7102 ☒ present   7202 ☐ not present
     Father received     7103 ☐ notice   7203 ☐ no notice and was    7104 ☒ present   7204 ☐ not present
     Guardian/custodian/relative received
                         7105 ☐ notice   7205 ☐ no notice and was    7106 ☐ present   7206 ☐ not present

2. Probable cause
7200.    ☐ A. does not exist that the minor is (abused/neglected/dependent); or
7100     ☒ B. does exist that the minor is (abused/neglected/dependent);
          The basis of the finding is:

                              See facts
                              In Petition

3. Immediate and urgent necessity
7207     ☐ A. does not exist to support removal of the minor from the home; or   Pay RPL #5
7107     ☒ B. does exist to support removal of the minor from the home and continuation in the home is contrary to the minor's
          welfare.
          The basis of the finding is: ____

                              See 2B

4. Reasonable efforts
7108     ☒ A. have been made but have not eliminated the immediate and urgent necessity to remove the minor from the home; or
7108     ☐ B. cannot, at this time, for good cause, prevent or eliminate the immediate and urgent necessity of removal of the minor
          from the home; or
7108     ☐ C. have been made and have eliminated the immediate and urgent necessity to remove the minor from the home; or
7208     ☐ D. have not been made.
          The basis of this finding is: ____

                           See 2B

```
ENTERED
JUDGE JOHN L. HUFF-1988

☒ MAY - 3 2019

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```
(OVER)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Case No. 19JA 456

(Rev. 5/16/12) CCJP 0601 B

**IT IS ORDERED:**

8001    ☐   A. The petition is dismissed.

4122    ☐   B. Consistent with the health, safety and best interests of the minor, the minor shall (be returned to/remain in) the custody of the (mother/father/parents/guardian/responsible relative).

4111    ☑   C. Consistent with the health, safety and best interests of the minor, the minor shall be removed from the home; and
          1. Temporary custody of the minor is granted to   JCW

4112    ☐      a. private custodian/guardian _____ whose relationship to the minor is _____

4113    ☑      b. DCFS Guardianship Administrator with the right to place the minor

          2. The temporary custodian is authorized to consent to

4124    ☑      a. ordinary and routine medical care AND major medical care* on behalf of the minor (temporary custody with the right to consent to major medical care).

4125    ☐      b. only ordinary and routine medical care on behalf of the minor (temporary custody without the right to consent to major medical care).

            *Major medical care is defined as those medical procedures which are not administered or performed on a routine basis and which involve hospitalization, surgery or use of anesthesia (e.g. appendectomies blood transfusions, psychiatric hospitalizations).

            c. _____

☐   D. A 405/2-25 or 405/2-20 Order of Protection entered this date is incorporated herein against _____

☐   E. DCFS or its assigns shall investigate the need for services in the following areas:

_____

_____

☐   F. If there is a finding of no reasonable efforts under paragraph 4 above, DCFS or its assigns shall make all reasonable efforts to ameliorate the causes contributing to the finding of probable cause or the immediate and urgent necessity which led to the removal of this minor from the home. These efforts shall include:

_____

4114    ☑   G. DCFS or its assigns shall prepare and file with the Court on or before   W | T W L 45 day
          a 45 day Case Plan pursuant to 705 ILCS 405/2-10.1.

          H. The Order on Visiting entered this date or on subsequent dates is incorporated herein by reference.

4119    ☑   I. A Social Investigation shall be filed by   W | T W L 30 days

☐   J. A diligent search shall be conducted within 10 days.

☐   K. This matter is sent to mediation. 4990 ☐ Yes   4311 ☐ No If no, reason _____

☑   L. The next hearing set is on:   5/10/19    at 9:30   a.m./p.m. for
       4123 ☐ presentation of an affidavit of diligent efforts to notify.    4290 ☐ progress report.
       4390 ☑ status.    4690 ☐ adjudication hearing.    4491 ☐ Court family conference.
       RGTC    4391 ☑ before the Judge.

4705    ☐   The first permanency hearing date is _____

**ENTERED:**

Dated   5·3·19 _____

_____ John L. HSH 1987.
          Judge             Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

STATE OF ILLINOIS
COUNTY OF COOK  exhibit K

SS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

IN THE INTEREST OF

Camille Turcios

Minor.

JUVENILE NO.:

19JA000454

## MOTION FOR TEMPORARY CUSTODY

Now comes **KIMBERLY M. FOXX,** through her assistant, and moves this court to appoint JANET WUKAS AHERN temporary custodian of Camille Turcios. In support, petitioner states as follows:

1.  There is probable cause that the minor is neglected and abused, pursuant to 705 ILCS 405.2-3(1)(b);2-3(2)(ii), as detailed in the attached Petition for Adjudication for Wardship.

2.  There is immediate and urgent necessity to take the child into temporary custody, pursuant to 705 ILCS 405/2-10, in that:

    This minor's siblings report an ongoing issue of domestic violence in the home while the children are present. This minor's siblings state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by this minor's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of this minor's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to this minor. Mother further disclosed that minor's father is dealing with depression and at times is paranoid. Mother attempted to remove this minor's siblings from their placement after protective custody was taken. Parents reside together.

3.  Reasonable efforts

    cannot prevent or eliminate the necessity of removal of the minor from the home

WHEREFORE, the petitioner moves this court to enter a Temporary Custody Order appointing JANET WUKAS AHERN in accordance with this motion, and enter appropriate findings.

Petitioner ID 33182

Daniela Silaides
Assistant State's Attorney

STATE OF ILLINOIS, ~~~~~~~~~~~~~
COUNTY OF COOK ~~~~~~~~ SS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

| | |
|---|---|
| IN THE INTEREST OF | JUVENILE NO.: |
| Anubis Tello | 19JA000455 |
| Minor. | |

## MOTION FOR TEMPORARY CUSTODY

Now comes **KIMBERLY M. FOXX,** through her assistant, and moves this court to appoint Janet Wukas Ahern temporary custodian of. In support, petitioner states as follows:

1.  There is probable cause that the minor is neglected and abused, pursuant to 705 ILCS 405 2-3(1)(b), 2-3(2)(ii), 2-3(2)(v), as detailed in the attached Petition for Adjudication for Wardship.

2.  There is immediate and urgent necessity to take the child into temporary custody, pursuant to 705 ILCS 405/2-10, in that:

> This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

3.  Reasonable efforts

> cannot prevent or eliminate the necessity of removal of the minor from the home

WHEREFORE, the petitioner moves this court to enter a Temporary Custody Order appointing Janet Wukas Ahern in accordance with this motion, and enter appropriate findings.

Petitioner ID 33182

_____
Daniela Silaides
Assistant State's Attorney

STATE OF ILLINOIS
COUNTY OF COOK      SS

Exhibit M

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
DEPARTMENT OF JUVENILE JUSTICE AND CHILD PROTECTION
CHILD PROTECTION DIVISION

| IN THE INTEREST OF | JUVENILE NO.: |
|---|---|
| Phoenix Tello | 19 JA 0004 5 6 |
| Minor. | |

## MOTION FOR TEMPORARY CUSTODY

Now comes **KIMBERLY M. FOXX**, through her assistant, and moves this court to appoint Janet Wukas Ahern temporary custodian of. In support, petitioner states as follows:

1. There is probable cause that the minor is neglected and abused, pursuant to 705 ILCS 405 2-3(1)(b), 2-3(2)(ii), as detailed in the attached Petition for Adjudication for Wardship.

2. There is immediate and urgent necessity to take the child into temporary custody, pursuant to 705 ILCS 405/2-10, in that:

This minor and minor's sibling report an ongoing issue of domestic violence in the home while they are present. This minor and minor's sibling state that they are fearful of mother. This minor's sibling has previously been observed with bruising that he stated were caused by minor's other sibling's father who resides in the home. Mother admits to having knowledge that this minor's sibling was previously bruised while in the care of minor's other sibling's father. Mother denied having knowledge of this when the incident was previously investigated. Mother is refusing access to minor's other sibling. Mother further disclosed that minor's other sibling's father is dealing with depression and at times is paranoid. Per mother this minor's father has a mental health diagnosis is aggressive and suffers with substance abuse issues. Mother attempted to remove this minor and minor's sibling from their placement after protective custody was taken. Father resides in Kentucky.

3. Reasonable efforts

cannot prevent or eliminate the necessity of removal of the minor from the home

WHEREFORE, the petitioner moves this court to enter a Temporary Custody Order appointing Janet Wukas Ahern in accordance with this motion, and enter appropriate findings.

Petitioner ID 33182

Daniela Silaides
Assistant State's Attorney

Exhibit N.

52

## Safety Assessment
## Safety Milestone

**When To Complete the Form:**Child Protection Initial Assessment

CERAP safety assessments must be conducted on the child's home environment, at a minimum, at the following case milestones:

**Milestone:**Within 24 hours after the investigator first sees the child.

### Safety Threat Identification

1.  A caregiver, paramour or member of the household whose behavior is, or has been, violent and out of control.

    Yes

| Member | Child(ren) | Describe |
|--------|-----------|----------|
| CAZARES, AVANGELINA | Tello, Anubis Tello, Phoenix | both children expressed fear of the alleged perp due to the on going domestic violence in the home |

2.  A caregiver, paramour or member of a household suspected of abuse or neglect that resulted in moderate to severe harm to a child or who has made a plausible threat of such harm to a child.

    No

3.  A caregiver, paramour or member of the household who has a documented history of perpetrating child abuse/neglect or any person for whom there is a reasonable cause to believe that he/she previously abused or neglected a child. The severity of that maltreatment, coupled with the caregiver's failure to protect, suggests that child safety may be an urgent and immediate concern.

    No

4.  Child sexual abuse is suspected and circumstances suggest that the child safety may be an immediate concern.

    No

5.  A caregiver, paramour or member of the household is hiding the child, refuses access, or there is some indication that a caregiver may flee with the child.

    No

6.  Child is fearful of his/her home situation because of the people living in or frequenting the home.

    No

7.  A caregiver, paramour, or member of the household describes or acts toward the child in a predominantly negative manner.

    No

8. A caregiver, paramour, or member of the household has dangerously unrealistic expectations for the child.

   No

9. A caregiver, paramour or member of the household expresses credible fear that he/she may cause moderate to severe harm to a child.

   No

10. A caregiver, paramour or member of the household has not, will not, or is unable to provide sufficient supervision to protect a child from potentially moderate to severe harm.

    No

11. A caregiver, paramour or member of the household refuses to or is unable to, meet a child's medical or mental health care needs and such lack of care may result in moderate to severe harm to the child.

    No

12. A caregiver, paramour or member of the household refuses to or is unable to meet the child's need for food, clothing, shelter, and/or appropriate environmental living conditions.

    No

13. A caregiver, paramour or member of the household whose alleged or observed substance abuse may seriously affect his/her ability to supervise, protect or care for the child.

    No

14. A caregiver, paramour or member of the household whose observed or professionally diagnosed or documented mental/physical illness or developmental disability seriously impairs his or her ability to meet the immediate needs of the children.

    No

15. The presence of violence, including domestic violence, that affects a caregiver's ability to provide care for a child and/or protection of a child from moderate to severe harm.
    Yes

| Member | Child(ren) | Describe |
|---|---|---|
| CAZARES, AVANGELINA | Tello, Anubis Tello, Phoenix TURCIOS, Camille | both children expressed fear of the alleged perp due to the on going domestic violence in the home |
| Turcios, Josue | Tello, Anubis Tello, Phoenix TURCIOS, Camille | both children expressed fear of the alleged perp due to the on going domestic violence in the home |

16. A caregiver, paramour, member of the household or other person responsible for the child's welfare engaged in or credibly alleged to be engaged in human trafficking poses a safety threat of moderate to severe harm to any child in the home.

    No

*ex. N*

## Family Strength/Mitigation Circumstances

**Is there a family strength that may serve to control or manage the safety threat?**
No

**Describe:**
nm refused to agree to a safety plan the oldest children expressed fear of the nm due to the on going domestic violence acv self reported that the mothers paramour caused his reported injuries during the 2018 child abuse investigation

## Safety Decision

**UNSAFE** - The child or children are likely to be moderately to severely harmed in the immediate future.

## Safety Plans

| | |
|---|---|
| **Child Name:** | Tello, Anubis |
| **Family Strength:** | |
| **Plan Type:** | Protective Custody |
| **Verbal Approval:** | 05/01/2019 |
| **Plan Attestation:** | - |

| | |
|---|---|
| **Child Name:** | Tello, Phoenix |
| **Family Strength:** | |
| **Plan Type:** | Protective Custody |
| **Verbal Approval:** | 05/01/2019 |
| **Plan Attestation:** | - |

| | |
|---|---|
| **Child Name:** | TURCIOS, Camille |
| **Family Strength:** | |
| **Plan Type:** | Protective Custody |
| **Verbal Approval:** | 05/01/2019 |
| **Plan Attestation:** | - |



## Risk Assessment

**Investigation Name:** Cazares, Avangelina
**Investigation ID:** 2347770 B
**Assessment ID:**
**Assessment Date:** 05/02/2019

**Risk Determination:** Risk to a child in this family has been identified
**Intervention:** pc was taken on 5/1/2019

### Participants Included

| Name | Role | DOB |
|------|------|-----|
| CAZARES, AVANGELINA | Adult | 05/26/1989 |
| Turcios, Josue | Adult | 03/12/1995 |
| Tello, Anubis | Child | 12/26/2007 |
| Tello, Phoenix | Child | 02/05/2007 |
| TURCIOS, Camille | Child | 09/23/2017 |

### Participants Excluded

| Name | Role | DOB | Reason Not Included |
|------|------|-----|---------------------|

$e \times N$

## Trauma Experiences

1. **Sexual Abuse**
   0 - There is no evidence that child has experienced sexual abuse.

2. **Physical Abuse**
   1 - There is a suspicion that the child has experienced physical abuse but no confirming evidence.

   **Describe:**
   the male acv disclosed that his mothers paramour caused the reported bruising to his arm during the 2018 dcfs investigation

3. **Emotional Abuse**
   1 - Child has experienced mild emotional abuse. For instance, child may experience some insults or is occasionally referred to in a derogatory manner by caregivers.

   **Describe:**
   the older female child victim disclosed that her mother/alleged perp verbally abuses her and lowers her self esteem by talking about her in a negative manner

4. **Neglect**
   0 - There is no evidence that child has experienced neglect.

13. **Parental Criminal Behavior (birth parents and legal guardians only)**
    0 - There is no evidence that youth's parents have ever engaged in criminal behavior.

## Child Strengths

20. **Family**
    0 - Significant family strengths. There is at least one family member who has a strong loving relationship with the child and is able to provide significant emotional or concrete support.

## Life Domain Functioning

32. **Living Situation**
    0 - Child is functioning well in his/her current living environment. Child and caregiver feel comfortable and safe dealing with issues that come up in day-to-day life.

34. **Developmental/Intellectual**
    0 - No evidence of developmental problems or mental retardation.

38. **Physical**
    0 - Child has no physical limitation.

## Child Behavioral/Emotional Needs

54. **Substance Abuse**
    0 - This rating is for a child who has no substance use difficulties at the present time. If the person is in recovery for greater that 1 year, they should be coded here, although this is unlikely for a child or adolescent.

## Child Risk Behaviors

$e \times N$.

57

67. **Delinquency**

0 - Child shows no evidence or has no history of criminal or delinquent behavior.

## Safety

98. **Condition of the Home**

0 - No health or safety concerns on property.

99. **Marital/Partner Violence in the Home**

0 - Parent/caregiver(s) appear to be functioning adequately. There is no evidence of notable conflict in the parenting relationship. Disagreements are handled in an atmosphere of mutual respect and equal power.

## Knowledge of Parenting and Child Development

102. **Discipline**

0 - Parent/caregiver generally demonstrates an ability to discipline her/his children in a consistent and respectful manner. Parent/caregiver's expectations are age-appropriate and he/she usually is able to set age appropriate limits and to enforce them.

104. **Demonstrates Effective Parenting Approaches**

0 - Parent/caregiver(s) applies flexibility in parenting role; parent has knowledge of multiple parenting practices and is able to implement them effectively with his/her children in a manner that is consistent with the child's development and needs.

## Identification and Use of Concrete Supports in Times of Need

107. **Financial Status**

0 - Family has financial resources necessary to meet needs or has limited resources but is effectively utilizing those to meet needs.

## Positive Family, Community and Social Connections

113. **Partner Relations**

0 - Parent/caregiver has a strong, positive, partner relationship with another adult. This adult functions as a member of the family. A person without a relationship who currently has no interest in one would be rated here.

116. **Natural Supports**

0 - Parent/caregiver(s) has substantial natural supports to assist in addressing most family and child needs.

## Ability to Nurture Social and Emotional Competence of Children

118. **Parent/Caregiver's Understanding of Impact of Own Behavior on Children**

0 - Parent/caregiver(s) has clear understanding of the impact of his/her behavior on children and is able to adjust behavior to limit negative impact.

119. **Empathy with Children**

0 - Adaptive emotional responsiveness. Parent/caregiver is emotionally empathic and attends child's emotional needs.

## Factors Contributing to Parent/Caregiver Resilience

**121. Physical Health**

0 - Parent/caregiver(s) has no physical health limitations that require assistance or impact childcare.

**122. Mental Health**

1 - Parent/caregiver(s) has some mental health limitations but they do not significantly interfere with ability to care for the child at this time.

**Describe:**

it is suspected that due to the nm erratic behavior that she could benefit from having a mental health evaluation per the nf the nm self reported to him that she has checked herself into a psychiatric unit for mental health concerns

**123. Substance Use**

0 - Parent/caregiver(s) has no substance–related limitations that impact or impair parent/care giving ability and childcare.

**124. Developmental**

0 - Parent/caregiver(s) has no developmental limitations that impact childcare.

## Substance Abuse Summary

| | |
|---|---|
| **Investigation Name:** | Cazares, Avangelina |
| **Investigation ID:** | 2347770B |
| **Screening ID:** | ▉ |
| **Created By:** | TOWNSEND, HALEMA A. |
| **Primary Assignment:** | |
| **Approved By:** | BOBO, LADRENA |
| **Approved Date:** | 05/02/2019 |
| **Agency:** | |

## Participants Excluded

| | |
|---|---|
| **Person ID:** | 4374969 |
| **Name:** | CAZARES, AVANGELINA |
| **DOB:** | 05/26/1989 |
| **Language:** | English |
| **Relationships:** | Mother of Tello, Anubis |
| | Mother of Tello, Phoenix |
| | Mother of TURCIOS, Camille |
| **Reason Not Screened:** | Client Refused |

| | |
|---|---|
| **Person ID:** | 16653964 |
| **Name:** | Tello, Anubis |
| **DOB:** | 12/26/2007 |
| **Language:** | English |
| **Reason Not Screened:** | Not Applicable |

| | |
|---|---|
| **Person ID:** | 17406610 |
| **Name:** | Tello, Phoenix |
| **DOB:** | 02/05/2007 |
| **Language:** | English |
| **Reason Not Screened:** | Not Applicable |

| | |
|---|---|
| **Person ID:** | 17406609 |
| **Name:** | Turcios, Josue |
| **DOB:** | 03/12/1995 |
| **Language:** | English |
| **Relationships:** | |

Step Father of Tello, Anubis
Step Father of Tello, Phoenix
Father of TURCIOS, Camille

**Reason Not Screened:** Unavailable

---

**Person ID:**              17863759
**Name:**                   TURCIOS, Camille
**DOB:**                    09/23/2017
**Language:**               English
**Reason Not Screened:**    Not Applicable

$-\ell \times N$

61

## Domestic Violence Screening

| | |
|---|---|
| **Investigation Name:** | Cazares, Avangelina |
| **Investigation ID:** | 2347770B |
| **Screening ID:** | ▮▮▮▮▮ |
| **Created By:** | TOWNSEND, HALEMA A. |
| **Primary Assignment:** | TOWNSEND, HALEMA A. |
| **Approved By:** | BOBO, LADRENA |
| **Approved Date:** | 05/02/2019 |
| **Agency:** | DCFS |

## Participants Included

| | |
|---|---|
| **Person ID:** | 4374969 |
| **Name:** | CAZARES, AVANGELINA |
| **DOB:** | 05/26/1989 |
| **Role:** | Adult |
| **Language:** | English |
| **Relationships:** | Mother of Tello, Phoenix |
| | Mother of Tello, Anubis |
| | Mother of TURCIOS, Camille |
| **Date Screened:** | 05/01/2019 |
| **Screened By:** | TOWNSEND, HALEMA A. |

**Significant Indicators:**

There are third party reports of domestic violence.
Yes

There is a criminal history of assault or damage to property that has been verified through LEADS.
No

There have been physical injuries to an adult (e.g. bruises, cuts, black eyes, marks on neck).
No

One partner seems to control everything (e.g. answers questions for the other partner).
No

Damage to home has been observed (e.g. phone ripped from the wall, holes in wall, broken doors or furniture).
No

There has been a self-reported incident or incidents of domestic violence.
Yes

One partner uses the children to control what the other partner says, does or thinks.
No

There has been prior or there is current police involvement for domestic violence.
No

There is a past order of protection.
No

There is an existing order of protection.
No

The family has a history of receiving domestic violence services.
No

Verbal Indicators:

Has your partner ever tried to keep you away from your family, friends, work or neighbors?
No

Has your partner ever threatened you or done something else that frightened you?
Yes

Has your partner ever pushed, slapped, punched, kicked or hurt you in other ways?
Yes

Has your partner ever threatened to use the children to control you in any way?
No

Has your partner ever called you bad names, ridiculed you, or put you down verbally?
Yes

Assessment:

Was or is there physical danger posed to the child from the batterer?
Yes . the children are present in the home when the alleged dv incident occurred

Does the physical, developmental or emotional impact of the domestic violence on the children rise to the level of suspected abuse and neglect?
Yes . the children are present in the home when the alleged dv incident occurred

Are there strategies the adult victim has used in the past that can be supported or strengthened to protect the children?
No

Has the batterer ever used or threatened to use weapons of any kind?
No

In consultation with the supervisor, is there any action required to address safety and/or risk?
Yes . pc was taken

Comments:

pc was taken

Participants Excluded



| | |
|---|---|
| **Person ID:** | 16653964 |
| **Name:** | Tello, Anubis |
| **DOB:** | 12/26/2007 |
| **Role:** | Child |
| **Language:** | English |
| **Reason Not Screened:** | Not Applicable |

| | |
|---|---|
| **Person ID:** | 17406610 |
| **Name:** | Tello, Phoenix |
| **DOB:** | 02/05/2007 |
| **Role:** | Child |
| **Language:** | English |
| **Reason Not Screened:** | Not Applicable |

| | |
|---|---|
| **Person ID:** | 17406609 |
| **Name:** | Turcios, Josue |
| **DOB:** | 03/12/1995 |
| **Role:** | Adult |
| **Language:** | English |
| **Relationships:** | Step Father of Tello, Phoenix<br>Step Father of Tello, Anubis<br>Father of TURCIOS, Camille |
| **Reason Not Screened:** | Unavailable |

| | |
|---|---|
| **Person ID:** | 17863759 |
| **Name:** | TURCIOS, Camille |
| **DOB:** | 09/23/2017 |
| **Role:** | Child |
| **Language:** | English |
| **Reason Not Screened:** | Not Applicable |

*exhibit. C*

## DEPARTMENT OF CHILDREN AND FAMILY SERVICES

### POLICY GUIDE 2016.01

## PROCEDURES 300 REPORTS OF CHILD ABUSE AND NEGLECT
## PROCEDURES 301 PLACEMENT AND VISITATION SERVICES

**DATE:**         February 8, 2016

**TO:**           Child Protection Specialists/Supervisors and Permanency Workers/Supervisors

**FROM:**         George H. Sheldon, Director *Jerry H. Shadda*

**EFFECTIVE:**    Immediately

### I.     PURPOSE

The purpose of this Policy Guide is to provide Child Protection and Permanency staff with information and instruction regarding OIG Report #13-1567, Recommendation #2. This recommendation addresses the responsibilities of Child Protection and Permanency staff in the temporary custody screening process for high risk cases where a parent has demonstrated such dangerous behaviors as abduction; torture; threats to kill with a plan; taking a child hostage; and severe mental illness, and the Department has made the Critical Decision to substantially restrict visitation. This recommendation will be added in a pending revision of **Procedures 300.120**, **Taking Children into Protective Custody**, **Procedures 301.210**, **Family-Child Visiting** and **Procedures 301 Appendix A**, **Family Visit Planning-Critical Decisions and Documentation Protocol.**

This Policy Guide is effective immediately.

### II.    PRIMARY USERS

Primary users of this Policy Guide are Child Protection Specialists/Supervisors and Permanency Workers/Supervisors.

### III.   SUMMARY

OIG recommendation #2 of report #13-1567 seeks to ensure that for such high risk cases as when a parent has demonstrated dangerous behavior and the Department has made the Critical Decision to substantially restrict visitation, that the Visitation Plan be filed with the court and parties within 10 days of the Department being named Temporary Custodian; that the Visitation Plan clearly state the reasons for such restriction; that the Visitation Plan include all supporting documentation; and that the Department intends to share information regarding the restriction with necessary persons.



## V.    INSTRUCTIONS

As part of the temporary custody screening process for such high risk cases as when a parent has demonstrated dangerous behavior, such as abduction; torture; threats to kill with plan; taking children hostage; and cases involving severe mental illness, and the Department has made the Critical Decision to substantially restrict visitation, the Child Protection Specialist or the assigned Permanency Worker shall be responsible for filing a Visitation Plan with the Court and Parties within 10 days of the Department being named Temporary Custodian in accordance with 705 ILCS 405/2-10(2). The Visitation Plan must comply with the requirements of **Procedures 301, Appendix A, Family Visit Planning-Critical Decisions and Documentation Protocol** and shall include:

1.    Supporting documentation such as police reports, psychological or psychiatric reports or case notes documenting observations; and

2.    A statement that the Department intends to share information on the restriction with necessary persons, such as school or daycare staff and the child's pediatrician.

## VI.   FILING INSTRUCTIONS

File this Policy Guide immediately after **Procedures 300.120, Taking Children into Protective Custody**, after **Procedures 301.210, Family-Child Visiting** and after **Procedures 301 Appendix A, Family Visit Planning-Critical Decisions and Documentation Protocol**.

## VII.  QUESTIONS

Questions concerning these revisions may be directed to the Office of Child and Family Policy at 217/524-1983 or e-mail through Outlook at OCFP-Mailbox or for non-Outlook users at cfpolicy@idcfs.state.il.us

**REPORTS OF CHILD ABUSE AND NEGLECT**
**June 11, 2019 – PT 2019.09**

**Section 300.130  Referral for Services**

a)    **Identification of Families Appropriate for Child Welfare Services**

Timely case openings and accurate identification of service needs and appropriate available services enable the Department to assist families in the development of their protective capacities and decrease child safety and risk concerns. The decision to open a case shall be made by the Child Protection Specialist in consultation with his or her immediate supervisor or can be court-ordered; however acceptance of services by the family is voluntary. No matter the recommended final finding of a report of abuse or neglect, if the Child Protection Specialist has identified a need for services they shall make every effort to engage the family in services appropriate for them.

1)    **Service Referrals When a Report has an Unfounded Recommended Finding (No Child Placed)**

When the Child Protection Specialist identifies a need for the family and the investigation is unfounded then the Child Protection Specialist shall consult with the Child Protection Supervisor and discuss a community service referral with the family. The family shall be informed on what service need is identified and how to access that service. Services include but are not limited to: substance abuse assessment/treatment, Family Advocacy Centers, Safe Families, mental health assessment/treatment, and domestic violence services. These referrals must be documented in a case note.

The Child Protection Specialist and Child Protection Supervisor may request an Intact Family Service case opening on an unfounded investigation if the service needs are significant and cannot be met via community resources. Such requests require approval of the Area Administrator and the Statewide Intact Family Services Administrator. (See **Procedures 302.388, Intact Family Services**)

No further action is required of the Child Protection Specialist when a child abuse or neglect report is unfounded and the family has not requested child welfare services. The hand-off document and the investigative file will be destroyed upon receipt of the notice to expunge.

2)    **Service Referrals When a Report has a Recommended Finding of Indicated (No Child Placed)**

A)    Opening the Service Case

Child Protection Specialists are required to comprehensively discuss with the family all concerns impacting the safety and well-being of their children. The Child Protection Specialist has responsibility to discuss and offer the family intact family services if the final finding of indicated has been recommended. The family should also be informed of community

**REPORTS OF CHILD ABUSE AND NEGLECT**
**June 11, 2019 – PT 2019.09**

services. If the family agrees to accept Intact Family Services, the Child Protection Specialist will complete all case opening activities in accordance with the Case Opening Protocol (**Procedures 302, Appendix R**), which will include up-to-date documentation of all investigative activities.

B)     Services Declined by the Family

In the event service needs are identified and the family refuses services, the Child Protection Specialist and Child Protection Supervisor shall consult to determine whether the case should be screened with the State's Attorney for court ordered services. If a case is screened with the State's Attorney for court ordered services but the State's Attorney declines to file a petition for court ordered services or consideration of a shelter care hearing, then the Child Protection Specialist and Supervisor shall consult with the DCFS Office of Legal Services. In addition, if consultation with another Department division (e.g., the Division of Clinical Practice and Development) is desired, the Child Protection Specialist and Supervisor shall make a request for such consultation thru the Area Administrator. The Area Administrator shall determine if the additional consultation is necessary.

C)     When an Intact Family Service Case is Already Open

If there is already an open Intact Family Service case, the Child Protection Specialist shall ensure that investigative information is communicated to the assigned Intact Family Service Worker.

**3)     Service Referrals during a Pending Investigation**

Child Protection Specialists may offer services or refer the child and family for services while an investigation is still pending.     Services may consist of community-based services, Intact Family Services, or placement of the child. If warranted, the Child Protection Specialist may consult with the Child Protection Supervisor about completing a referral for Intact Family Services (IFS) for a specific identified service need. The family's willingness to accept services while the investigation is pending is voluntary and **shall not** be considered in making a determination to indicate or unfound. (See **Procedures 302.388, Intact Family Services**)

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

**b)** **Types of Service**

The Department shall provide families with the type of service that best meets the health and safety needs of the child.

1) No Services Needed

This type of service intervention is indicated when children have been assessed to be at no or low risk and the family is capable of managing risk issues using their own strengths and resources.

Selection Criteria

- The children have been assessed "safe" in accordance with the CERAP.

- The risk assessment indicates no significant risks such as domestic violence, substance abuse, mental illness, sex abuse or developmental delays.

- Minimum parenting standards are being met.

- The family has many strengths and resources and is capable of resolving family issues without referral to community resources.

- If there has been an indicated finding of abuse or neglect, the incident was isolated and not severe or the perpetrator no longer has access to the children.

- There is no juvenile court involvement.

- Safety and service plans are not required.

2) Referral for Community-Based Services

This type of service intervention is appropriate when children have been assessed to be at low to medium risk and the family is capable of using support services provided through community resources without further Department intervention. The purpose of Department involvement is to actively link the family with those services and resources that effectively address their needs. The Child Protection Specialist shall actively be involved in the referral/linkage process and shall document this involvement in a contact note.

Referral/linkage activities include, but are not limited to:

- Initiating contact with providers;

- Advocating on the family's behalf;

- Documentation of the frequency of and duration of services recommended for the specific members of the family and the conditions/circumstances that the services are designed to mitigate;

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

- Documentation of the date and time of the intake session;

- Assistance with the family's transportation issues;

- Participation in the intake process when necessary; and

- Verification that the family is following through and utilizing the services provided.

Selection Criteria

- The children have been assessed "safe" in accordance with the CERAP.

- The family has sufficient strengths, extended family resources and community resources to address any identified needs or problems such as domestic violence, substance abuse, mental illness or developmental delays. The presence of any of these issues, in and of itself, does not threaten the immediate safety of the children.

- Minimum parenting standards are being met.

- If there has been an indicated finding of abuse or neglect, the incident was isolated and not severe, or the perpetrator no longer has access to the children, and the family displays remorse and accepts responsibility for the incident and is willing and capable of resolving the issue with community support.

- The family does not have a history of serious or chronic harm of a child.

- There is no past or current juvenile court involvement.

- There is the presence of a protective and reliable parent.

- The services and resources needed by the family are available and accessible in the community.

- The family has demonstrated that they are capable and willing to follow through with all needed services.

- The family is capable and willing to make necessary changes to assure the safety, permanency and well-being of the children.

- A safety plan is not required.

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

A perpetrator's access to a child shall be measured by the caretaker's willingness and ability to protect the child in the future, the level of involvement of the perpetrator in the child's life, and whether the perpetrator is incarcerated. If a perpetrator's incarceration is relied upon to determine access, the worker shall consider the length of incarceration and shall reassess risk whenever the situation changes.

The Child Protection Specialist will remain involved with the family long enough to ensure that the family is receiving appropriate community resources. A case may be opened for Department services when services are not available to the family through community resources. It is expected that these types of investigations will be resolved within 60 days.

3) **Intact Family Services (IFS)**

Short-term intact services are indicated when children in the family are at risk and services could successfully mitigate the risk factors in an average of 6-12 months.

"Intact Family Services (IFS)" are services provided to a family with the family's consent:

- As the result of a referral from an **indicated** report of child abuse or neglect;

- Pursuant to an order of supervision from a court of competent jurisdiction as the result of a referral from an **indicated** child abuse or neglect investigation;

- During a pending investigation of a report of child abuse or neglect when the assigned Child Protection Specialist determines that a family needs Department services to ensure the safety of a child(ren) in the family and the Child Protection Specialist's Supervisor approves the recommendation; or

- As the result of a child(ren) who was in placement less than 30 days being returned home to parent(s)/guardian(s) without a legal relationship with the Department pursuant to a court decision or lapse in protective custody.

Selection Criteria

- Family has agreed to voluntarily accept services;

- Department has no current legal relationship with any children in the family/household;

- Minimum parenting standards are being met and/or the parents are capable of meeting the standards after short-term intervention by the Department;

- The children have been assessed safe or unsafe and can be made safe with a safety plan, in accordance with the CERAP;

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

- The risk assessment indicates that the family is facing problems such as domestic violence, substance abuse, mental illness or developmental issues. The family is also likely to have multiple and complex child welfare needs. The family has sufficient strengths and resources to address identified issues with the assistance of Department interventions;

- The family may have a history of chronic or serious harm to a child and the current incident of abuse or neglect has been assessed to be of low to moderate severity or a situational crisis has led to the behaviors or conduct that threatens the safety of the children;

- Children with Failure to Thrive allegations;

- The family has little or no support system; and

- The family may not have accepted responsibility for the incident of harm and may be resistive/unmotivated to change or accept Department involvement. However, there are indications that the family is likely to be able to change with Department support.

Refer to **Procedures 302.388, Intact Family Services,** for additional information.

4) Substitute Care

This type of care is appropriate for families where there are safety threats that cannot be controlled or mitigated through the service provision and it is necessary for the removal of the children from the children's caregiver via a juvenile court order. Substitute care cases shall receive permanency services.

**Note:** Child and family service cases must be opened whenever a child is taken into protective custody.

Refer to **Procedures 301, Placement and Visitation Services**, for additional information.

c) **Processing the IFS Referral**

When the assigned investigator of a pending investigation determines that a family needs IFS in order to ensure the safety of a child and the Child Protection Supervisor approves the recommended services the family has agreed to accept, the Child Protection Specialist shall complete a **CFS 2040, Intact Family Services Case Referral and Assignment Form**. The Child Protection Supervisor shall then forward the **CFS 2040**, and if applicable, a **CFS 1441-A, Safety Plan** as an email attachment to the Area Administrator for approval. **(See Procedures 302.388, Intact Family Services)**

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

If the Child Protection Supervisor declines the service referral, the Child Protection Supervisor shall promptly inform the Child Protection Specialist of the reasons the referral was declined and to provide explicit directions for any actions necessary for child safety and the ongoing investigation. The Supervisor shall document the decision and subsequent communication with the Child Protection Specialist in a supervisory note.

1) The Area Administrator Decision

   The Area Administrator shall approve or disapprove the service referral within two (2) working days of receipt. Pending the Area Administrator's decision, the assigned Child Protection Specialist remains responsible for the safety of each child in the family and shall review each referral to determine if it is appropriate for services and that all documentation is included.

   When the Area Administrator declines the referral, the Area Administrator shall promptly notify the assigned Child Protection Specialist and Child Protection Supervisor of the reasons the referral was declined and provide explicit directions regarding any actions the Child Protection Specialist and Child Protection Supervisor are to take regarding child safety and the ongoing investigation.

   When the Area Administrator approves a referral for prevention/placement services, the Child Protection Supervisor shall complete case opening requirements in accordance with the Case Opening Protocol (**Procedures 302, Appendix R**) which will include up-to-date documentation of all investigative activities and send the approved case via email "DCFS.IntactReferral" to the Intact Family Services unit to be assigned to the appropriate agency. Once assigned, the Intact Family Services unit shall send back to the Area Administrator and Child Protection Supervisor the name and contact information of the assigned agency and their contact person.

2) Additional Requirements for Opening an Intact Family Services Case:

   A) Consent to Obtain Mental Health Records

      Obtaining the mental health records of the family members is required when the case is opened. Records may be obtained by consent of the parent or through pursuit of records via an administrative subpoena. Mental health records are required as the information they contain may determine the course of service delivery and need for juvenile court intervention.

   B) Subpoena of Mental Health Records

      When subpoenaed documents and information have not been forwarded to the Child Protection Specialist within 10 days of the date of issuance of the subpoena, the Child Protection Specialist must immediately contact the Keeper of Records at the medical/mental health facility to determine if there is a valid reason for the delay. All contacts with the Keeper of Records regarding subpoenaed files must be documented on a contact note. If the Keeper of Records fails or refuses to comply with the subpoena, the Child Protection Supervisor shall immediately notify the

## REPORTS OF CHILD ABUSE AND NEGLECT
### June 11, 2019 – PT 2019.09

DCFS Regional Counsel and the Office of the Inspector General and provide documentation explaining why the information is important to the investigation. Consultation with the Regional Counsel and the OIG regarding subpoenaed records/information shall be documented on a contact note.

Area Administrators shall take into consideration any identified safety and risk issues and determine whether it is appropriate to open an IFS case before receipt of requested mental health records, when consents have been obtained or subpoenas issued.

At the case hand-off meeting, the Child Protection Specialist shall share all parent/caregiver mental health information and records with the IFS specialist.

If mental health records are received by the Child Protection Specialist after the case hand-off meeting, a conference including the Child Protection and IFS Supervisors shall occur immediately to address safety and risk implications noted in subpoenaed records and required protective action, up to and including involvement of juvenile court. The Child Protection Supervisor shall note in a supervisory note if any specific safety decisions were shared with the IFS Supervisor.

During the case hand-off meeting, the Child Protection and IFS Supervisors shall use the **CFS 440-12 Investigation/Intact Parental Mental Health Case Matrix** to determine urgent service planning needs for the family. The supervisors shall document, in the investigation and IFS files, the topics on the Matrix checklist reviewed at the meeting, as well as any other relevant topics not listed in the Matrix.

**d)** **Case Transition**

1) Hand-Off Conference/Staffing

Within one (1) business day of case assignment notification from the DCFS Area Administrator, the Child Protection Supervisor will contact the appropriate DCFS/POS Intact Family Services Supervisor and have a complete case hand-off discussion about the safety needs of the child(ren), the dynamics of the case, the strengths of the family, and the service needs of the family. Whenever possible the case hand-off staffing shall involve the Child Protection Specialist and the assigned Intact Family Services Worker. At the case hand-off conference, the Child Protection Supervisor and IFS Supervisor shall agree on a tentative date when the assigned Child Protection Specialist and the assigned IFS Worker will conduct the transitional visit with the family at the family's primary residence. The tentative date must be confirmed with the family before being set.

The following documents will be provided by the Child Protection Specialist or their Supervisor for the Case Hand-off Staffing:

- SACWIS Hand-off Document;
- All available applicable records (e.g., medical, school, etc.);
- **CFS 2025** - Home Safety Check List;
- **CANTS 18DV** - Domestic Violence Screen;
- **CFS 440-5** Adult Substance Abuse Screen;
- **CFS 600-3** Signed consent(s) for release of information;
- **CFS 1000-1 or CFS 1000-1/S,** copies of completed Hispanic Client Language Determination Form (if applicable);
- **CFS 370-1,** Norman certification (if applicable);
- DCP/Intact Parental Mental Health Case Checklist (if applicable);
- **CFS 2040,** Intact Family Services Case Referral and Assignment Form;
- **CFS 1441, CERAP** Safety Determination Form; and
- **CFS 1441-A, Safety Plan,** (if applicable)

During the case hand-off staffing the following will occur (if applicable):

A) The safety needs of the child(ren), the dynamics of the case, the strengths of the family, and the service needs of the family will be discussed;

B) The Child Protection Specialist will discuss any safety decisions. The Child Protection Supervisor shall note in the investigation file if any specific safety decisions were shared with the Intact Family Services Supervisor at the hand-off staffing;

C) The Child Protection Specialist shall share all parent/caregiver mental health information and records with the Intact Family Services Worker;

D) The Child Protection Supervisor and Intact Family Services Supervisor will use the **CFS 440-12, Investigation/Intact Parental Mental Health Case Matrix** to determine urgent service planning needs for the family. The Child Protection Supervisor and Intact Family Services Supervisor shall document in the investigation and Intact Family Services files, the topics on the Matrix checklist reviewed at the case hand-off staffing as well as any other relevant topics not listed in the Matrix; and

E) The Child Protection Specialist will bring dates and times when it is possible for the family and Child Protection Specialist to meet for the Transitional visit within the next 48 hours.

REPORTS OF CHILD ABUSE AND NEGLECT

## Joint Committee on Administrative Rules
# ADMINISTRATIVE CODE

### TITLE 89: SOCIAL SERVICES
### CHAPTER III: DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### SUBCHAPTER a: SERVICE DELIVERY
### PART 300 REPORTS OF CHILD ABUSE AND NEGLECT
### SECTION 300.120 TAKING CHILDREN INTO TEMPORARY PROTECTIVE CUSTODY

---

**Section 300.120  Taking Children Into Temporary Protective Custody**

a)      Local law enforcement officers, Department child protection staff, and physicians treating a child may take temporary protective custody of a child without the consent of the persons responsible for the child's welfare, if they have reason to believe that:

   1)      leaving the child in the home or in the care and custody of the child's caregiver presents an imminent danger to the child's life or health. The child shall not be taken into protective custody for the sole reason that the child was left with a relative, so long as the relative is willing to keep the child, and the Department has reason to believe that the relative can adequately and safely care for the child; and

   2)      there is insufficient time to obtain a Juvenile Court order authorizing temporary custody.

b)      In addition to the above requirements, Department child protection staff shall ensure and document that reasonable efforts were made to prevent or eliminate the need to remove a child from the child's home. However, it may be that due to the individual circumstances of the family and the child's best interest, safety and well-being, no efforts reasonably can be made to maintain the child in the child's home. Reasonable efforts shall not be required if there exists any of the grounds for expedited termination of parental rights as described in 89 Ill. Adm. Code 309 (Adoption Services for Children for Whom the Department of Children and Family Services Is Legally Responsible). Such a determination that no efforts reasonably can be made must be documented. If no efforts reasonably can be made to safely prevent or eliminate the removal of the child, the child shall be taken into protective custody.

c)      Local law enforcement officers or physicians who take temporary protective custody of a child must immediately notify the Department of their action.

d)      When taking temporary protective custody of a child or receiving a child who was

taken into temporary protective custody by the local law enforcement officer or by a physician, Department child protection staff shall:

1) immediately notify the State Central Register of this action;

2) make every reasonable effort to notify the child's parents, personal guardian, legal custodian, and any relative caregiver from whom the child was removed, of the action;

3) request that the Guardianship Administrator or designee authorize any ordinary medical care or treatment necessary for those children taken into temporary protective custody;

4) if the child needs treatment of an emergency nature and the parent or guardian is unavailable or unwilling to provide consent, the physician or hospital shall be asked to proceed under the Consent by Minors to Medical Procedures Act [410 ILCS 210], which allows treatment to be given to minors without consent; and

5) obtain a shelter care hearing under the provisions of the Juvenile Court Act within 48 hours, excluding Saturdays, Sundays, and holidays, in order to retain custody for more than 48 hours.

e) The Department recognizes the importance of maintaining sibling relationships in those situations in which children must be placed away from their parents. The Department shall provide training for child protection specialists, their supervisors and managers regarding the importance of maintaining sibling relationships and the child's sense of attachment to his/her siblings, the importance of maintaining sibling relationships over the child's lifespan, and the impact on the child if those relationships are severed.

f) At any time during the investigation, but no later than 30 days prior to the date of the scheduled adjudicatory hearing, the child protection specialist shall request a legal screening to determine whether the State's Attorney should be asked to file a petition for expedited termination of parental rights, if:

1) it becomes known that there is present one or more of the grounds for seeking expedited termination of parental rights described in 89 Ill. Adm. Code 309.50 (Identification of Children for Potential Adoption Planning); and

2) the parents are unwilling to voluntarily surrender the child for adoption or consent to the adoption of the child by a specified person.

(Source: Amended at 40 Ill. Reg. 648, effective December 31, 2015)

Exhibit Q



66

**Case Note**

**Investigation Name:** Cazares, Avangelina
**Investigation ID:** 2347770B
**Sub-Category:** Reasonable Efforts
**Created By Worker:** MCKEEVER, ANITA R.
**Created Date/Time:** 05/02/2019 04:04 AM

As reported and transitioned from the previous shift, this case has had police involvement with current assigned CPI with an additional male CPI to try to gain access to take custody of the 2 yr old ACV. The PSA of evening shift explained to this PSA the previous efforts and recommended that the efforts for the mid-night shift would no be beneficial to go out due to the safety factors involved.

$ex. Q$

## Case Note

**Investigation Name:** Cazares, Avangelina
**Investigation ID:** 2347770B
**Sub-Category:** Reasonable Efforts
**Created By Worker:** TOWNSEND, HALEMA A.
**Created Date/Time:** 05/02/2019 09:40 AM

the cpi contacted the Chicago police department to request assistance with the pending investigation on 5/1/2019
2 officers responded the cpi explained that she was informed by the manager that she needs to implement was safety plan for the children involved the cpi explained the narrative of the investigation the police were allowed in the home and confirmed that the children had beds and computers in the home and the home has working utilities and new appliances the officer added that he's seen homes in much worse conditions

**Case Note**

**Investigation Name:** Cazares, Avangelina
**Investigation ID:** 2347770B
**Sub-Category:** Reasonable Efforts
**Created By Worker:** TOWNSEND, HALEMA A.
**Created Date/Time:** 05/02/2019 10:05 AM

notice to parents were mailed to both parents
in English and Spanish

CANTS 13
1/2000



Exhibit K

163

State of Illinois
Department of Children and Family Services

# Police Report Redaction Notice

DATE: **July 31 2019**

TO: **Josue Turcios / Avangelina Cazares**

FROM: **Administrative Hearings (Intake) Unit**

RE: **Police Report**

A police report regarding this matter:

      a: _____ is

      b: __**X**__ is not

      contained in the investigative file of SCR # __**2347770-B**__.

**If "a" is checked above, the police report has been removed from the copy of the investigative file being provided to you.** Due to the confidential nature of police investigations and the possibility that this investigation, if ongoing, may be jeopardized by the premature release of information, the Department of Children and Family Services is not including a copy of the report at this time.

In accordance with Department Rules 336 (Appeal of Child Abuse and Neglect Investigation Findings) you have the right to request a copy of all documents the Department intends to present to the Administrative Law Judge at your hearing. If the documentation will include the police report removed from your file, you may request a copy of the report by filing a written request with the Department after your first hearing date has been set.

**If "b" is checked above, the file did not contain police reports.**

**RJ**
_____

Signature

## Illinois



Exhibit S

## Reasonable Efforts to Preserve or Reunify Families and Achieve Permanency for Children

To better understand this issue and to view it across States, download the PDF (/pubpdfs/reunify.pdf) (821 KB) of this publication.

*Current Through March 2016*

**What Are Reasonable Efforts**

**Citation: Cons. Stat. Ch. 325, § 5/8.2**

The term 'family preservation services' refers to all services to help families, including adoptive and extended families.

Appropriate family preservation services shall be included in the service plan if the Department of Children and Family Services has determined that those services will ensure the child's health and safety, are in the child's best interests, and will not place the child in imminent risk of harm. Such plans may include, but are not limited to:

- Case management services
- Homemakers, including emergency caretakers, housekeepers, and chore services
- Counseling, including individual therapy, infant stimulation therapy, family therapy, group therapy, self-help groups, drug and alcohol abuse counseling, vocational counseling, and postadoption services
- Parent education
- Day care, including protective day care and day care to meet educational, prevocational, or vocational needs
- Emergency assistance and advocacy assessments, including coordinated services to secure emergency cash, food, and housing
- Respite care
- In-home health care
- Transportation to obtain any of the above services
- Medical assistance

**When Reasonable Efforts Are Required**

**Citation: Cons. Stat. Ch. 20, § 505/5**

The department shall offer family preservation services to help families, including adoptive and extended families. Such services shall be offered:

- To prevent the placement of children in substitute care when the children can be cared for at home or in the custody of the person responsible for the children's welfare
- To reunite children with their families
- To maintain an adoptive placement

Family preservation services shall only be offered when doing so will not endanger the children's health or safety. The child and his or her family shall be eligible for services as soon as the report of suspected child abuse or neglect is determined to be indicated. The department may also provide services to any child or family when the report of suspected abuse or neglect is determined to be unfounded if the conditions in the child's or family's home are reasonably likely to subject the child or family to future reports of suspected child abuse or neglect. Acceptance of such services shall be voluntary.

When a child is placed in foster care, the department shall ensure and document that reasonable efforts were

EX. 5

made to prevent or eliminate the need to remove the child from the child's home. The department must make reasonable efforts to reunify the family when temporary placement of the child occurs unless otherwise required.

## When Reasonable Efforts Are NOT Required

### Citation: Cons. Stat. Ch. 20, § 505/5; Ch. 705, § 405/2-13.1

When the department believes that further reunification services would be ineffective, it may request a finding from the court that reasonable efforts are no longer appropriate. The court shall grant this motion with respect to a parent of the minor if the court finds after a hearing that the parent has:

- Had his or her parental rights to another child involuntarily terminated
- Been convicted of:
    - First degree or second degree murder of another child of the parent
    - Attempt, conspiracy, or solicitation to commit first degree or second degree murder of another child of the parent
    - Aggravated battery, aggravated battery of a child, or felony domestic battery, any of which has resulted in serious bodily injury to the minor or another child of the parent
    - An offense in any other State substantially similar to any of the above offenses

The department is not required to provide further reunification services after such a finding.

EXHIBIT 1

152

**REQUEST FOR FILING ABUSE/NEGLECT PETITION: PRIOR REPORT HISTORY**
(List all previous indicated or pending CANTS reports involving Family)

SCR#: 2347770A          Report Date: 04/11/2018 ▮:

Brief Narrative-Description of the Indicated or Pending Allegations (Do not simplify, list the allegations):
Child, age 10 is afraid to go home after school. Please contact reporter. Anubis, (child), age 10, stated mother's boyfriend hurt him last night. Unknown paramour was angry at Anubis because of losing a book or something of that nature. The child has bruises on one of his arms and scratches on both of his arms. The child told ▮ the paramour did this to his arms but did not state if the marks were caused by the paramours hands, fist, or an object. There was no information provided from the child other than he stated he is afraid to go home after school today because of the paramour. It is unknown if Avangelina, (mother) was home or was told about the incident. There is another unknown, (sister), about 11-12 years old that was home and may have witnessed the incident, according to Anubis. It is unknown if this has happened before to the child. School is dismissed at 2:45 pm. today.

UNFOUNDED
11- Cuts Bruises Welts Abrasions and Oral Injuries

SCR#: 2347770A          Report Date: 04/30/2019 ▮:

Brief Narrative-Description of the Indicated or Pending Allegations (Do not simplify, list the allegations):
there have been ongoing incidents of physical domestic violence involving Avangelina and her husband, Josue, while Phoenix (12), Anubis (11), and Camille (1) have been inside the home. A week ago, Phoenix sent a recording to ▮ after Avangelina and Josue had a physical fight and on the recording Avangelina can be heard saying things like "it's okay because I can kick his ass", and that she and Josue blame their aggression on their Irish genes. 2-3 weeks ago, Phoenix sent text messages to ▮ late in the night saying that the kids were scared because they could overhear Avangelina and Josue "fighting" and that it was "horrific". It is not known if police have ever responded to any calls at the home for the domestic violence, but have been called to the home for welfare checks in the past that have never resulted in any concerns reported by the police. According to ▮ ▮, Anubis may have ADHD and mild asthma. Two years ago, a physician said that Anubis needed an inhaler and it is bellied that Avangleina has not kept this refilled for him. Phoenix had told ▮ ▮ that Avangelina and Josue "drink a lot" and that Avangelina tries to hide it from them.

PENDING

Page ____ of ____

153

#60-Substantial Risk of Physical Injury/Environment Injurious to Health
and Welfare by Neglect
#82- Environmental Neglect

SCR#: _____     Report Date: _____     Reporter: _____

Brief Narrative-Description of the Indicated or Pending Allegations (Do not simplify, list the allegations):

_____

_____

_____

_____

*Exhibit 12*

**STATE OF ILLINOIS** )
                      )    **SS**
**COUNTY OF** <u>COOK</u> )

## IN THE CIRCUIT COURT OF <u>COOK</u>    COUNTY
## COUNTY DEPARTMENT, JUVENILE DIVISION

**In the interest of** )
Phoenix Tello
Anubis Tello )
Camille Turcios )
                     )    **No.**       19JA000456
**a minor(s)** )

### AFFIDAVIT DOCUMENTING DCFS EFFORTS

I, <u>HALEMA TOWNSEND</u>, certify and state as follows:

1.    I am a(n) ☒ Investigator / ☐ DCFS Caseworker / ☐ Private Agency Caseworker (check one) assigned to the above captioned case.

2.    The event(s) that brought this case to the attention of DCFS at this time: <u>The mother had prior knowledge of the prior incident that involved the acv sustaining bruises and she was dishonest with the prior investigator the mother is directly involved in the on going and esclating domestic violence in the home when the chiildren are present both children express fear of their mother the home cluttered and is a hazards to the children</u>

3.    The specific reason(s) I have identified that leads DCFS to place or consider placing the child is/are as follows:
<u>The parent is the primary caregiver for the child involved. The child victims cannot return to the home due to concerns involving the mothers unwillingness to protect the children due to her involvment in the on going and esclating domestic violence.the home cluttered and is a hazards to the children</u>

     The above information is based on
     ☐ my own personal knowledge
     ☒ information received from other
        sources, which I believe to true.

FILED
2019 MAY -3 AM 11 2

4.    Based on the reason(s) I have identified, (check one):
     ☐ the specific efforts (with the names of providers if applicable) that were made to prevent placement are explained and described below

EX. U

or

☒Under the circumstances, no efforts would prevent placement of the child because of the following

The child will be placed at substantial risk for physical injury/environment injurious if they remains in the care of their biological mother the home cluttered and is a hazards to the children the mother does not see the home as being an environmental hazard to the children involved.

The above information is based on
☐ my own personal knowledge
☒ information received from others
   which I believe to true.

Under penalties provided by law, pursuant to Section 1-109 of the Illinois Code of Civil Procedure. I certify that the statements set forth above are true and correct, except as to matters stated above on information and belief as to these matters. I certify that I believe those statements to be true.

_____
Signature

5/2/19
Date

FILED

2019 MAY -3 AM 11:12

# CERTIFICATION

Under the penalties provided by law, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters the undersigned certifies as aforesaid that he/she verily believes the same to be true.

Investigating Worker

Case: 1:19-cv-05570 Document #: 1 Filed: 08/19/19 Page 79 of 90 PageID #:79

Exhibit V

**(705 ILCS 405/2-18) (from Ch. 37, par. 802-18)**
    **Sec. 2-18. Evidence.**
    (1) At the adjudicatory hearing, the court shall first consider only the question whether the minor is abused, neglected or dependent. The standard of proof and the rules of evidence in the nature of civil proceedings in this State are applicable to proceedings under this Article. If the petition also seeks the appointment of a guardian of the person with power to consent to adoption of the minor under Section 2-29, the court may also consider legally admissible evidence at the adjudicatory hearing that one or more grounds of unfitness exists under subdivision D of Section 1 of the Adoption Act.
    (2) In any hearing under this Act, the following shall constitute prima facie evidence of abuse or neglect, as the case may be:
        (a) proof that a minor has a medical diagnosis of battered child syndrome is prima facie evidence of abuse;
        (b) proof that a minor has a medical diagnosis of failure to thrive syndrome is prima facie evidence of neglect;
        (c) proof that a minor has a medical diagnosis of fetal alcohol syndrome is prima facie evidence of neglect;
        (d) proof that a minor has a medical diagnosis at birth of withdrawal symptoms from narcotics or barbiturates is prima facie evidence of neglect;
        (e) proof of injuries sustained by a minor or of the condition of a minor of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent, custodian or guardian of such minor shall be prima facie evidence of abuse or neglect, as the case may be;
        (f) proof that a parent, custodian or guardian of a minor repeatedly used a drug, to the extent that it has or would ordinarily have the effect of producing in the user a substantial state of stupor, unconsciousness, intoxication, hallucination, disorientation or incompetence, or a substantial impairment of judgment, or a substantial manifestation of irrationality, shall be prima facie evidence of neglect;
        (g) proof that a parent, custodian, or guardian of a minor repeatedly used a controlled substance, as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act, in the presence of the minor or a sibling of the minor is prima facie evidence of neglect. "Repeated use", for the purpose of this subsection, means more than one use of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act;
        (h) proof that a newborn infant's blood, urine, or meconium contains any amount of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act, or a metabolite of a controlled substance, with the exception of controlled substances or metabolites of those substances, the presence of which is the result of medical treatment administered to the mother or the newborn, is prime facie evidence of neglect;
        (i) proof that a minor was present in a structure or

vehicle in which the minor's parent, custodian, or guardian was involved in the manufacture of methamphetamine constitutes prima facie evidence of abuse and neglect;

(j) proof that a parent, custodian, or guardian of a minor allows, encourages, or requires a minor to perform, offer, or agree to perform any act of sexual penetration as defined in Section 11-0.1 of the Criminal Code of 2012 for any money, property, token, object, or article or anything of value, or any touching or fondling of the sex organs of one person by another person, for any money, property, token, object, or article or anything of value, for the purpose of sexual arousal or gratification, constitutes prima facie evidence of abuse and neglect;

(k) proof that a parent, custodian, or guardian of a minor commits or allows to be committed the offense of involuntary servitude, involuntary sexual servitude of a minor, or trafficking in persons as defined in Section 10-9 of the Criminal Code of 1961 or the Criminal Code of 2012, upon such minor, constitutes prima facie evidence of abuse and neglect.…

Illinois    $Exhibit\ W$

## Child Witnesses to Domestic Violence

To better understand this issue and to view it across States, download the PDF (/pubpdfs/witnessdv.pdf) (663 KB) of this publication.

*Current Through April 2016*

**Circumstances That Constitute Witnessing**

**Citation: Comp. Stat. Ch. 720, §§ 5/12-0.1; 5/12-3.2**

*In criminal law:* For purposes of this section:

- 'Child' means a person under 18 years of age who is the defendant's or victim's child or stepchild or who is a minor child residing within or visiting the household of the defendant or victim.
- 'In the presence of a child' means in the physical presence of a child or knowing or having reason to know that a child is present and may see or hear an act constituting an offense.

### Consequences

#### Citation: Comp. Stat. Ch. 720 § 5/12-3.2

In addition to any other sentencing alternatives, a defendant who commits, in the presence of a child, a felony domestic battery, aggravated domestic battery, aggravated battery, unlawful restraint, or aggravated unlawful restraint against a family or household member shall be:

- Required to serve a mandatory minimum imprisonment of 10 days, perform 300 hours of community service, or both
- Liable for the cost of any counseling required for the child at the discretion of the court

(Back to Top)

## Definitions of Domestic Violence

To better understand this issue and to view it across States, download the PDF (/pubpdfs/defdomvio.pdf) (585 KB) of this publication.

*Current Through August 2017*

**Defined in Domestic Violence Civil Laws**

**Citation: Cons. Stat. Ch. 750, § 60/103**

'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or willful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis.

'Domestic violence' means abuse, as above.

'Harassment' means knowing conduct that is not necessary to accomplish a purpose that is reasonable under the circumstances, would cause a reasonable person emotional distress, and does cause emotional distress to the petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:

- Creating a disturbance at the petitioner's place of employment or school
- Repeatedly telephoning the petitioner's place of employment, home, or residence
- Repeatedly following the petitioner about in a public place or places
- Repeatedly keeping the petitioner under surveillance by remaining present outside his or her home,

*e X . W*

school, place of employment, vehicle, or other place occupied by the petitioner or by peering in the petitioner's windows

- Improperly concealing a minor child from the petitioner, repeatedly threatening to improperly remove a minor child of the petitioner, repeatedly threatening to conceal a minor child from the petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless respondent was fleeing an incident or pattern of domestic violence
- Threatening physical force, confinement, or restraint on one or more occasions

'Interference with personal liberty' means committing or threatening physical abuse, harassment, intimidation, or willful deprivation so as to compel another to engage in conduct from which he or she has a right to abstain or to refrain from conduct in which he or she has a right to engage.

### Defined in Child Abuse Reporting and Child Protection Laws

#### Citation:

This issue is not addressed in the statutes reviewed.

### Defined in Criminal Laws

### Citation: Cons. Stat. Ch. 720, §§ 5/12-3.2 & 3.3; Ch. 725, § 5/112A-3

A person commits 'domestic battery' if he or she intentionally or knowingly without legal justification by any means:

- Causes bodily harm to any family or household member
- Makes physical contact of an insulting or provoking nature with any family or household member

A person who, in committing a domestic battery, intentionally or knowingly causes great bodily harm or permanent disability or disfigurement commits aggravated domestic battery. A person who, in committing a domestic battery, strangles another individual commits aggravated domestic battery. For the purposes of this subsection, 'strangle' means intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual.

'Abuse,' 'domestic violence,' and 'harassment' have the same meaning as defined in chapter 750, § 60/103, above.

### Persons Included in the Definition

### Citation: Cons. Stat. Ch. 750, § 60/103; Ch. 725, § 5/112A-3

*In civil and criminal law:* 'Family or household members' include the following:

- Spouses, former spouses, parents, children, stepchildren, and other persons related by blood or by present or prior marriage
- Persons who share or formerly shared a common dwelling
- Persons who have or allegedly have a child in common
- Persons who share or allegedly share a blood relationship through a child
- Persons who have or have had a dating or engagement relationship
- Persons with disabilities and their personal assistants
- Caregivers, as defined in chapter 720, § 5/12-21 or § 5/12-4.4a

For purposes of this paragraph, neither a casual acquaintanceship nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute a dating relationship.

Exhibit X

1

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Investigation Transition/Handoff Document

| | | | |
|---|---|---|---|
| **Investigation ID:** | 2347770B | | |
| **Investigation Name:** | Cazares, Avangelina | | |
| **Report Date/Time:** | 04/30/2019 09:51 AM | **Initial Due Date:** | 05/14/2019 |
| **30-Day Due Date:** | 05/29/2019 | **Final Finding Due Date:** | 06/29/2019 |
| **Status:** | Closed | **Investigation Stage:** | Formal |
| **Final Finding:** | Indicated | **Finding Date:** | 06/28/2019 |
| **Level Of Intervention:** | | | |

The purpose of this transition packet is to document and facilitate the transition of service from  to .

**The persons / family for whom the services are being transferred:**

RECEIVED
INTAKE
July 29 2019

The meeting is / was conducted on :

**The address of the meeting:**

**Narrative:**

**Attachments:**
- Intake Summary
- Investigation Summary
- Safety Assessments
- Risk Assessments
- Substance Abuse Screenings
- Domestic Violence Screenings
- Notes
- Not Applicable/Waiver Requests

$\ell \times X$

## Child Abuse/Neglect Report - CA/N Subsequent Report

**Intake ID:** █████████

**Intake Date/Time:** 04/30/2019 09:13 AM

| | |
|---|---|
| **Investigation Name:** | Cazares, Avangelina |
| **Investigation ID:** | 2347770B |
| **Report Date/Time:** | 04/30/2019 09:51 AM |
| **Response Code:** | Normal |
| **Response Indicators:** | None |
| **Hispanic:** | Yes |
| **Interpreter Required:** | No |
| **DCFS Ward:** | No |
| **Media/High Profile:** | No |
| **Language:** | English |

### Subjects

| | |
|---|---|
| **Person Name:** | CAZARES, AVANGELINA |
| **Person ID:** | 4374969 |
| **Participant Name:** | Cazares, Avangelina |
| **Role:** | Adult |
| **Date Of Birth:** | 05/26/1989 (29 years) |
| **Gender:** | Female |
| **Race:** | White |
| **AKA:** | |
| **Legal Outcome:** | |
| **Residence Address:** | Unknown, Chicago, IL |

EX. X

3

| | |
|---|---|
| **Person Name:** | Turcios, Josue |
| **Person ID:** | 17406609 |
| **Participant Name:** | Unknow, Josue |
| **Role:** | Adult |
| **Date Of Birth:** | |
| **Gender:** | Male |
| **Race:** | White |
| **AKA:** | |
| **Legal Outcome:** | |
| **Residence Address:** | Unknown, Chicago, IL. |

| | |
|---|---|
| **Person Name:** | Tello, Phoenix |
| **Person ID:** | 17406610 |
| **Participant Name:** | Tello, Phoenix |
| **Role:** | Child |
| **Date Of Birth:** | 02/05/2007 (12 years) |
| **Gender:** | Female |
| **Race:** | White |
| **AKA:** | |
| **Legal Outcome:** | |
| **Residence Address:** | Unknown, Chicago, IL |

| | |
|---|---|
| **Person Name:** | Tello, Anubis |
| **Person ID:** | 16653964 |
| **Participant Name:** | Tello, Anubis |
| **Role:** | Child |
| **Date Of Birth:** | 12/26/2007 (11 years) |
| **Gender:** | Male |
| **Race:** | White |
| **AKA:** | |
| **Legal Outcome:** | |
| **Residence Address:** | Unknown, Chicago, IL |

4

| | |
|---|---|
| **Person Name:** | TURCIOS, Camille |
| **Person ID:** | 17863759 |
| **Participant Name:** | Unknown, Camille |
| **Role:** | Child |
| **Estimated Age:** | 1 years |
| **Gender:** | Female |
| **Race:** | White |
| **AKA:** | |
| **Legal Outcome:** | |
| **Residence Address:** | Unknown, Chicago, Il. |

## Allegations/Relationships

| Alleged Perp | Relationship | Alleged Victim | Allegation |
|---|---|---|---|
| Cazares, Avangelina | Mother | Tello, Phoenix | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |
| Cazares, Avangelina | Mother | Tello, Anubis | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |
| Cazares, Avangelina | Mother | Unknown, Camille | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |
| Unknow, Josue | Step Father | Tello, Phoenix | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |
| Unknow, Josue | Step Father | Tello, Anubis | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |
| Unknow, Josue | Father | Unknown, Camille | 60-Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect |

Exhibit Y

**Joint Committee on Administrative Rules**

# ADMINISTRATIVE CODE

TITLE 89: SOCIAL SERVICES
CHAPTER III: DEPARTMENT OF CHILDREN AND FAMILY SERVICES
SUBCHAPTER a: SERVICE DELIVERY
PART 315 PERMANENCY PLANNING
SECTION 315.215 RETURN HOME PENDING STATUS HEARING

---

**Section 315.215  Return Home Pending Status Hearing**

a)    Description
      The minor will be in short-term care with a continued goal to return home pending a
      status hearing.  When the court finds that a parent has not made reasonable progress
      to date, the court identifies what actions the parent and the Department or purchase
      of service agency  must take in order to justify a finding of reasonable progress and
      sets a status hearing to be held not earlier than nine months from the date of
      adjudication, nor later than 11 months from the date of adjudication, during which
      the parent's progress will again be reviewed.

b)    Criteria for Selection
      This goal may only be selected by the court.  It is selected when:

      1)    the parents have not substantially fulfilled their obligations under the service
            plan and corrected the conditions that brought the child into care; and

      2)    nine months have not yet elapsed since adjudication.

c)    Status Hearing

      1)    When the court selects this goal, the court sets a status hearing to review the
            parents' progress.  The date for the status hearing will be not earlier than nine
            months from the date of adjudication, nor later than 11 months from the date
            of adjudication.  The court tells the parents what they must do to
            demonstrate reasonable efforts or progress.  The court also requires that
            relevant, appropriate reunification services continue to be available during
            this time period.

      2)    When the court conducts the status hearing at 9 to 11 months after the
            adjudication, the court determines whether the parents have made reasonable
            efforts or progress toward attaining the goal of "return home."  If the court
            finds that the parents have failed to make reasonable efforts or progress, the
            court may select the goal "substitute care pending court decision regarding

EXHIBIT Y

termination of parental rights" based upon the parents' failure "to make reasonable efforts to correct the conditions that were the basis for removal of the child or to make reasonable progress toward the return of the child to the parent within nine months of an adjudication of neglected, abused or dependent minor." [750 ILCS 50/1D(m)]

3)      This goal is not available for selection by a caseworker. However, when the court selects this goal, the caseworker shall request a legal screening to determine whether the parents have failed to fulfill their obligations under the service plan and failed to correct the conditions that brought the child into care, and the case is approaching nine months since adjudication or more than nine months have passed since adjudication.

Exhibit Z

**Joint Committee on Administrative Rules**

# ADMINISTRATIVE CODE

### TITLE 89: SOCIAL SERVICES
### CHAPTER III: DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### SUBCHAPTER a: SERVICE DELIVERY
### PART 315 PERMANENCY PLANNING
### SECTION 315.245 CONCURRENT PLANNING

---

**Section 315.245  Concurrent Planning**

a)  Description

Concurrent planning is a process whereby the Department or purchase of service agency will make reasonable efforts to return the child home within nine months after the child's placement in substitute care, while at the same time making it clear to the child's family that an alternative permanency plan for the child is being developed that will take effect if the parents do not make sufficient progress to enable the return home of their children within nine months.

b)  Criteria for Selection of Cases

Concurrent planning must be utilized for a child who has been removed from a family that meets the criteria described below unless sufficient evidence exists to seek expedited termination of parental rights.  The criteria are:

1)  the parent has another child for whom parental rights were involuntarily terminated and there have been no significant changes in conditions or behaviors in the interim;

2)  a finding that at birth the child's blood or urine contained any amount of a controlled substance as defined in Section 102(f) of the Illinois Controlled Substances Act, or a metabolite of a controlled substance, with the exception of controlled substances or metabolites of such substances the presence of which in the newborn infant was the result of medical treatment administered to the mother or the newborn infant, and that the biological mother of this child is the biological mother of at least one other child who was adjudicated a neglected minor under Section 2-3(c) of the Juvenile Court Act of 1987, after which the biological mother had the opportunity to participate in a drug counseling, treatment, and rehabilitation program;

3)  the family has a history, either through their own efforts or with clinical treatment or specialized social services, of repeated, failed attempts to correct conditions that resulted in child maltreatment;

Case: 1:19-cv-05570 Document #: 1 Filed: 08/19/19 Page 90 of 90 PageID #:90

4) there has been a single severe incident of abuse and/or neglect;

5) there has been abuse/neglect toward a child who is particularly vulnerable given the child's age, developmental stage and/or disability;

6) a child requires placement and has a sibling in out-of-home care because of the current caregiver's abuse or neglect;

7) the parent has a diagnosed mental illness that renders the parent unable to provide or protect the child and that, upon assessment, indicates:

    A) a history of treatment without response;

    B) the prognosis that the condition will respond too slowly to meet the child's needs according to the child's age and development; or

    C) the parent in treatment continually disregards medication or other treatment interventions;

8) the parent has a developmental disability that, upon assessment, indicates that the parent may be unable to provide for, protect or nurture the child and the family has no other relatives or social supports able or willing to assist in parenting.

c) If efforts to return the child home are unsuccessful, the Department or purchase of service agency will consider the alternatives described in Section 315.305 (When Reunification Is Inappropriate).